UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KARA PENNA and RONALD PENNA, M.D.,

                                    Plaintiffs,

                vs.                                          **PETITION FOR
                                                             REMOVAL TO
                                                             FEDERAL COURT**

PEERLESS INSURANCE,

                                                             CV No.:
                                    Defendant.
_____

          EXCELSIOR INSURANCE COMPANY ("Excelsior"), incorrectly sued as Peerless Insurance, defendant in the above-captioned matter, for purposes of removing this action to the United States District Court, Western District of New York, respectfully states, shows and petitions to the Court as follows:

          1.    <u>State Court Action.</u>  This is an action filed on or about March 17, 2006 in New York State Supreme Court, County of Monroe, Index No. 3224/06, being a suit entitled and styled as set forth in the caption above.  A copy of the Summons and Complaint filed with the Monroe County Clerk's Office are annexed hereto as **Exhibit A**. The state court action was filed and venued in Monroe County, New York within this Court's territorial jurisdiction.  Defendant subsequently appeared and answered by service of its Answer dated April 17, 2006.  A copy of defendant's Answer is annexed hereto as **Exhibit B**.

          2.    <u>Federal Jurisdiction.</u>  Upon information and belief, the plaintiffs are residents of New York State, Monroe County and owned property in Monroe County which is the subject of the litigation.  The defendant is a foreign corporation, incorporated and with its headquarters and principle place of business in the State of New Hampshire.  The

LAW OFFICE OF ROY A. MURA • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

Complaint does not allege the amount in controversy but, upon information and belief, it is Excelsior's understanding that the plaintiffs allege damages exceeding $75,000.00, exclusive of interest and costs.   Accordingly, this Court has original jurisdiction over this action based upon complete diversity of citizenship of the parties pursuant to 28 U.S.C. §1332(a), and this civil action is one which may be removed pursuant to 28 U.S.C. §1441.

3.      Timeliness of Removal Petition.   The attached Summons and Complaint were served on Peerless Insurance  on March 30, 2006 shown by the affidavit of service attached hereto as **Exhibit C.**   As such, removal of this action is timely under 28 U.S.C. §1446 (b), as made within 30 days of March 30, 2006.

4.      Relief Requested.   Defendant respectfully requests that the United States District Court, Western District of New York accept this Petition for Removal, remove this case and action from the Monroe County Supreme Court, and that it take and assume jurisdiction over this matter and issue such further orders and processes as may be necessary to the trial and conclusion thereof.   This Petition for Removal is submitted and filed without waiver of procedural or substantive defenses which are or may become available to the defendant.

DATED:  Buffalo, New York
          April 17, 2006

/s/ Scott D. Storm_____
Scott D. Storm, Esq.

LAW OFFICE OF ROY A. MURA
*Attorneys for Defendant*
930 Rand Building
14 Lafayette Square
Buffalo, New York  14203
(716) 855-2800

LAW OFFICE OF ROY A. MURA ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK  14203
(716) 855-2800 ● FAX (716) 855-2816

cc:     Anthony A. DiNitto, Esq.
        *Attorney for Plaintiffs*
        400 Crossroads Building
        Rochester, New York 14614
        (585) 325-5150

Law Office of Roy A. Mura • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • fax (716) 855-2816

# EXHIBIT "A"

STATE OF NEW YORK
SUPREME COURT   COUNTY OF MONROE

---

KARA PENNA AND
RONALD M. PENNA

                              Plaintiffs,


          -vs-


PEERLESS INSURANCE COMPANY
C/O Joseh P. Tracey
35 Dickinson Road
Keene, New Hampshire, 03431

                              Defendants.

---

**Index No.** *322-/06*

Plaintiff designate Monroe
County as the place of trial

The basis of the venue is
residence of plaintiffs

**SUMMONS**

Plaintiff resides in Rochester,
New York

---

To the above named Defendant(s):

    YOU ARE HEREBY SUMMONED to answer the complaint in this action and to
serve a copy of your answer, or, if the complaint is not served with this summons, to
serve a notice of appearance, on the Plaintiffs' Attorney(s) within 20 days after the
service of this summons, exclusive of the day of service (or within 30 days after the
service is complete if this summons is not personally delivered to you within the State of
New York); and in case of your failure to appear or answer, judgment will be taken
against you by default for the relief demanded in the complaint.


Dated: February 14, 2006



                              _____
                              Anthony A. DiNitto

                              **Faraci Lange, LLP**
                              Attorneys for Plaintiff(s)
                              400 Crossroads Building
                              Two State Street
                              Rochester, NY 14614-1308
                              (585) 325-5150

RECEIVED

MAR 3 0 2006

LEGAL

STATE OF NEW YORK          COUNTY OF MONROE
SUPREME COURT

KARA PENNA AND
RONALD M. PENNA, M.D.

                              Plaintiffs,          Index No. _____ _____

     -vs-                                          COMPLAINT

PEERLESS INSURANCE,

                              Defendants.

Plaintiffs, through their attorneys, Faraci Lange, LLP complaining of the

defendants, alleges as follows:

     1.  At all times herein, plaintiffs, Kara Penna and Ronald M. Penna, M.D. were

and are residents of the City of Rochester, County of Monroe and State of New York.

     2.  Upon information and belief, defendant, Peerless Insurance was and is a

domestic corporation organized and existing under and by virtue of the laws of the state

of New York, with an office for the transaction of business in Syracuse, New York.

     3.  Upon information and belief, at some time prior to June 3, 2003, defendant

issued to Kara Penna LT, c/o Ronald Penna, a homeowner's policy which included

insurance coverage of the dwelling, personal property and loss of use of 58 Ellington

Circle, Rochester NY, and which policy bore the number HP3M587704.

     4.  Upon information and belief, said policy was in full force and effect on June 3,

2003, and covered the 58 Ellington Circle, Town of Greece, City of Rochester in the state

of New York property owned by Ronald Penna.

5. Upon information and belief, on or about June 3, 2003, plaintiff hired Gatti Plumbing Inc. to install new water faucets and eight stainless steel flex risers/connectors to the faucets within 58 Ellington Circle property.

6. Upon information and belief, on or about July 9, 2003, the Plaintiff returned to the 58 Ellington Circle property to find standing water throughout the condominium.

7. Upon information and belief, water was found to be coming from the vanity of the hall bathroom where the stainless steel flex risers/connectors had been previously installed.

8. As a result of the aforementioned, the plaintiff has incurred costs and expenses for the repair of water damage to the structure of the condominium, costs and expenses for the removal of mold, loss of rental income, loss of property value and loss of personal property along with costs and inconvenience due to the uninhabitability of the condominium.

9. After the incident of on or about July 9, 2003, Plaintiffs duly submitted the required property loss information to defendant for property damage for payment by defendant.

10. That despite the fact that all damages submitted to defendant by plaintiff were and are related to the damage caused by the faulty installation of a faucet, defendant has wrongfully refused to pay all of the bills for damages incurred at the property.

11. That pursuant to the terms of the policy above described, defendant was and remains obligated to bear the cost of said property damage.

12. That plaintiff has sustained damage to his home and has incurred thousands of dollars of damage to his home and in repairs to his home, and as a result has been obligated to make these payments out of his own funds.

13. That by reason of the foregoing, it is essential that plaintiffs rights pursuant to the terms of the above described insurance contract be declared by this court.

Wherefore, plaintiff demands judgment against the defendant as follows:

A. That the court declares the rights and other legal relations of plaintiffs and defendant pursuant to the terms of the above described policy.

B. For such other and further relief and declaration of the rights and other legal relations of the parties to this action as shall be necessary and proper in the premises, together with the costs and disbursements of this action.

DATED: February 14, 2006

FARACI LANGE. LLP

By: Anthony A. DiNitto, Esq.
Attorneys for Plaintiffs
400 Crossroads Building
Rochester, New York 14614
(585) 325-5150

# EXHIBIT "B"

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KARA PENNA and RONALD PENNA, M.D.,

                                       Plaintiffs,

            vs.

PEERLESS INSURANCE,

                                         Defendant.

**ANSWER**

CV No.:

---

Defendant, EXCELSIOR INSURANCE COMPANY ("Excelsior"), incorrectly sued as Peerless Insurance, by its attorneys, Law Office of Roy A. Mura, states the following, upon information and belief, in answer to the plaintiffs' Complaint dated February 14, 2006:

       1.     Denies knowledge or information to form a belief as to the allegations contained in paragraphs "1", "5", "6", "7", "8" and "12" of the Complaint.

       2.     Denies the allegations contained in paragraphs "2", "9", "10", "11" and "13" of the Complaint.

       3.     With respect to the allegations contained in paragraphs "3" and "4" of the Complaint, admits that prior to June 3, 2003, Excelsior issued to Kara Penna, LT, a homeowners policy of insurance in regard to property located at 58 Ellington Circle, Rochester, New York under policy number HP3M587704, the terms, provisions, exclusions, limitations and conditions of said policy speak for themselves, are incorporated by reference as if fully set forth herein and are for this Court's legal

- 1 -

LAW OFFICE OF ROY A. MURA ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK 14203
(716) 855-2800 ● FAX (716) 855-2816

interpretation, where appropriate, and otherwise denies having knowledge or information sufficient to form a belief regarding the remaining allegations of said paragraph.  A copy of the policy is attached as **Exhibit A.**

4.    Denies each and every other allegation contained in the Complaint not heretofore expressly admitted, denied or otherwise responded to.

## FIRST AFFIRMATIVE DEFENSE

5.    The Complaint must be dismissed for its failure to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

6.    The subject policy of insurance provides in pertinent part as follows in the HOMEOWNERS 6 UNIT-OWNERS FORM, HO0006 (04/91):

> **DEFINITIONS**
>
> In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household . . .
>
> **3.**    "Insured" means you and residents of your household who are:
>
> > **a.**    your relatives; or
> >
> > **b.**    other persons under the age of 21 and in the care of any person named above.

7.    Upon information and belief, the plaintiff, Ronald Penna, is not a named insured shown in the Declarations and is also not an "insured" as the term is defined in the policy as he did not reside with the named insured, Kara Penna, at the time of the loss.  Therefore, the claims asserted by the plaintiff, Ronald Penna, must be

LAW OFFICE OF ROY A. MURA ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK  14203
(716) 855-2800 ● FAX (716) 855-2816

dismissed as he lacks standing to sue for coverage under the Excelsior policy for the losses alleged in the Complaint.

### THIRD AFFIRMATIVE DEFENSE

8.   The subject policy of insurance provides in pertinent part as follows in the HOMEOWNERS 6 UNIT-OWNERS FORM, HO0006 (04/91), as amended by the HOMEOWNERS POLICY SPECIAL PROVISIONS NEW YORK, FORM NO. 80-734 (01/96):

#### SECTION I – CONDITIONS

**8.   Suit Against Us.**  No action can be brought unless the policy provisions have been complied with and the action is started within two years after the date of loss.

9.   Upon information and belief, coverage for the incident alleged in the Complaint is precluded under the subject policy of insurance as the plaintiffs have failed to timely commence the litigation pursuant to the above-quoted condition of the policy.

### FOURTH AFFIRMATIVE DEFENSE

10.   The subject policy of insurance provides in pertinent part as follows in the HOMEOWNERS 6 UNIT-OWNERS FORM, HO0006 (04/91):

#### SECTION I – CONDITIONS

**7.   Other Insurance.**  If a loss covered by this policy is also covered by other insurance, except insurance in the name of a corporation or association of property owners, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

LAW OFFICE OF ROY A. MURA • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

If, at the time of the loss, there is other insurance in the name of the corporation or association of property owners covering the same property covered by this policy, this insurance will be excess over the amount recoverable under such other insurance.

11.    Upon information and belief, in the unlikely event the plaintiff secures a judgment resolving any coverage issues in his favor, such coverage is limited pursuant to the above quoted condition.

### FIFTH AFFIRMATIVE DEFENSE

12.    The subject policy of insurance provided in pertinent part as follows in the HOMEOWNERS 6 UNIT-OWNERS FORM, HO0006 (04/91):

**SECTION I – CONDITIONS**

2.    **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

d.    Protect the property from further damage.   If repairs to the property are required, you must:

(1)    Make reasonable and necessary repairs to protect the property; and

(2)    Keep an account record of repair expenses;

13.    Upon information and belief, the plaintiffs breached the above-quoted policy conditions of the subject policy of insurance and consequently may not recover thereunder as they failed to protect the property from further damage; and/or failed to make reasonable and necessary repairs to protect the property; and/or failed to keep an accurate record of repair expenses.

Law Office of Roy A. Mura • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • Fax (716) 855-2816

## SIXTH AFFIRMATIVE DEFENSE

14.    The subject policy of insurance provides in pertinent part as follows

in the HOMEOWNERS 6 UNIT-OWNERS FORM, HO0006 (04/91):

### SECTION I – CONDITIONS

2.    **Your Duties After Loss.**  In case of a loss to your
covered property, you must see that the following are
done:

e.    Prepare an inventory of damaged personal
property showing the quantity, descriptions,
actual cash value and amount of the loss.
Attach all bills, receipts and related documents
that justify the figures in the inventory

15.    Upon information and belief, the plaintiffs breached the above-

quoted condition to the subject policy of insurance and consequently may not recover

thereunder as they failed to provide the actual cash value of the items lost and failed to

provide any bills, receipts and related documents that justify the figures in the inventory.

## SEVENTH AFFIRMATIVE DEFENSE

16.    The subject policy of insurance provides in pertinent part as follows

in the HOMEOWNERS 6 UNIT-OWNERS FORM, HO0006 (04/91):

### SECTION I – PROPERTY COVERAGES

### COVERAGE C – Personal Property

We cover personal property owned or used by an "insured"
while it is anywhere in the world.

17.    Upon information and belief, the plaintiff, Ronald Penna, completed

a Sworn Statement In Proof of Loss for Personal Property which alleges claims for

property taxes, clean up supplies, utility bills, homeowners association fees and consultation fees paid to a mold expert, none of which constitute personal property under the subject policy and accordingly the plaintiffs are precluded from coverage for any of these expenses due to the above-quoted policy language.

### EIGHTH AFFIRMATIVE DEFENSE

18.     The subject policy of insurance provides in pertinent part as follows in the HOMEOWNERS 6 UNIT-OWNERS FORM, HO0006 (04/91):

#### SECTION I – PERILS INSURED AGAINST

We insure for direct physical loss to the property described in Coverages A and C caused by a peril listed below unless the loss is excluded in SECTION I – EXCLUSIONS.

12.  **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance . . .

This peril does not include loss:

a.      On the "residence premises," if the dwelling has been vacant for more than 30 consecutive days immediately before the loss.

19.     Upon information and belief, coverage for the incident and damages complained of in the Complaint are precluded because the residence premises and dwelling where the loss occurred had been vacant for more than 30 consecutive days immediately before the loss.

LAW OFFICE OF ROY A. MURA • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

## NINTH AFFIRMATIVE DEFENSE

20.     The subject policy of insurance provides in pertinent part as follows

in the HOMEOWNERS 6 UNIT-OWNERS FORM, HO0006 (04/91):

### DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household.

**3.**     "Insured" means you and residents of your household who are:

    **a.**     Your relatives; or

    **b.**     Other persons under the age of 21 and in the care of any person named above.

\* \* \* \* \*

### SECTION I – PROPERTY COVERAGES
### COVERAGE C – Personal Property

We cover personal property owned or used by an "insured" while it is anywhere in the world.  At your request, we will cover personal property owned by:

    **1.**     Others while the property is on the part of the "residence premises" occupied by an insured;

    **2.**     A guest or a "residence employee" while the property is in any residence occupied by an "insured"

21.     Upon information and belief, coverage for any personal property owned by Ronald Penna and/or his wife which was allegedly damaged in the subject incident is not covered under the subject policy of insurance.

## TENTH AFFIRMATIVE DEFENSE

22.     The subject policy of insurance provides the following condition to coverage as follows in the HOMEOWNERS 6 UNIT-OWNERS FORM, HO0006 (04/91):

### SECTION I – CONDITIONS

2.      **Your Duties After Loss.**  In case of a loss to covered property, you must see that the following are done:

    f.      As often as we reasonably require:

      **(1)**     Show the damaged property;

      **(2)**     Provide us with records and documents we request and permit us to make copies

23.     Upon information and belief, the plaintiffs breached the above-quoted condition to the subject policy of insurance and consequently may not recover thereunder as they failed to show Excelsior the damaged property at all times requested and failed to provide Excelsior with all the records and documents which it requested.

## ELEVENTH AFFIRMATIVE DEFENSE

24.     The subject policy of insurance provides in pertinent part as follows in the HOMEOWNERS 6 UNIT-OWNERS FORM, HO0006 (04/91):

### SECTION I – EXCLUSIONS

We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

5.      **Neglect**, meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

LAW OFFICE OF ROY A. MURA ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK 14203
(716) 855-2800 ● FAX (716) 855-2816

25.   Upon information and belief, coverage for the incident and damages complained of in the Complaint are precluded from coverage due to the application of the above-quoted exclusion.

## TWELFTH AFFIRMATIVE DEFENSE

26.   The subject policy of insurance provides in pertinent part as follows in the HOMEOWNERS 6 UNIT-OWNERS FORM, HO0006 (04/91):

### SECTION I – CONDITIONS

1.   **Insurable Interest and Limit of Liability.**   Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a.   To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

   b.   For more than the applicable limit of liability.

27.   Upon information and belief, there is no coverage under COVERAGE A – Dwelling or under COVERAGE D – Loss of Use for the plaintiff, Kara Penna, as she was not the owner of the dwelling at the time of the alleged incident and, therefore, lacks an insurable interest in the dwelling.   There is also no coverage for Ronald Penna under these sections of the policy as he is not a named insured on the policy and otherwise has no right of recovery.

## THIRTEENTH AFFIRMATIVE DEFENSE

28.   In the highly unlikely event that either of the plaintiffs are successful in securing an order, decision or judgment against Excelsior, any recovery is limited pursuant to the provisions, limitations and conditions of the subject policy of insurance

LAW OFFICE OF ROY A. MURA ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK 14203
(716) 855-2800 ● FAX (716) 855-2816

including, but not necessarily limited to, **SECTION I – PROPERTY CONDITIONS, 3. Loss Settlement** and **10. Loss Payment** portions of the subject policy of insurance, which are incorporated by reference as if fully set forth herein. A copy of the policy is attached as **Exhibit A**.

## AS AND FOR A FIRST COUNTERCLAIM
## AGAINST THE PLAINTIFFS

29. In response to the plaintiffs' claim, Excelsior conducted an investigation into the incident to determine whether coverage existed pursuant to the terms of the subject policy of insurance. For the reasons stated in the other affirmative defenses, which are incorporated herein by reference, coverage is precluded under the subject policy of insurance.

30. Throughout Excelsior's investigation of the plaintiffs' claim, it incurred expenses for which it is entitled to recover due to the lack of coverage for the reasons specified herein. The demand for reimbursement of expenses includes, *inter alia*, attorneys' fees, costs and disbursements.

## JURY DEMAND

31. Pursuant to Rules 38(b) and 81(c) of the Federal Rules of Civil Procedure, Excelsior hereby requests that this matter be tried before a jury.

**WHEREFORE**, Excelsior Insurance Company demands judgment as follows:

A.    dismissing the Complaint herein;

LAW OFFICE OF ROY A. MURA • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

   B. declaring that the plaintiffs, individually and collectively, are precluded from coverage under the subject policy of insurance;

   C. awarding Excelsior Insurance Company attorneys' fees, costs and disbursements associated with defending this action;

   D. limiting any recovery by the plaintiffs pursuant to the terms and provisions of the subject policy of insurance; and

   E. for such other and further relief as to this Court may deem just, proper and equitable.

DATED: Buffalo, New York
    April 17, 2006

       /s/ Scott D. Storm_____
       Scott D. Storm, Esq.

       LAW OFFICE OF ROY A. MURA
       *Attorneys for Defendant, Excelsior*
           *Insurance Company*
       930 Rand Building
       14 Lafayette Square
       Buffalo, New York 14203
       (716) 855-2800

TO: Anthony A. DiNitto, Esq.
   FARACI & LANGE, LLP
   *Attorneys for Plaintiffs*
   400 Crossroads Building
   Rochester, New York 14614
   (585) 325-5150

LAW OFFICE OF ROY A. MURA • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

 **Peerless Insurance** ™
*Member of Liberty Mutual Group*

| Policy Number: HP3M587704 | Prior Policy: |
|---|---|

**Policy Period:** 05/20/2003   **To:** 05/20/2004   12:01 am Standard Time at the Mailing Address of the Named Insured

Coverage Is Provided In   EXCELSIOR INSURANCE COMPANY

Billing Type: DIRECT BILL   -   ANNUAL

| Named Insured and Mailing Address: | Agent: |
|---|---|
| KARA PENNA LT<br>C/O RONALD M PENNA<br>86 BROOKLINE<br>ROCHESTER NY 14616 | CHARLES M SCARPULLA AGENCY INC<br>1800 ENGLISH RD<br>ROCHESTER NY 14616<br><br>Agent Code: 4810156   Agent Phone: (585)-225-4073 |

### HOMEOWNERS POLICY

— PREMIUM SUMMARY —

**THIS IS NOT A BILL. YOU WILL RECEIVE A SEPARATE BILL FOR THIS TRANSACTION.**

| | | | |
|---|---|---|---|
| Reason for Transaction | NEW BUSINESS | Base Coverage Premium | $ 207.00 |
| Transaction Effective Date | 05/20/2003 | Additional Coverage Premium | $ 25.00 |
| Premium For This Transaction | $ 161.00 | Credits and Debits | $ −71.00 |
| | | Total Policy Premium | $ 161.00 |

— PROPERTY LOCATION —

The property insured is located at the mailing address except as follows:

| Location | Address |
|---|---|
| 001 | 58 ELLINGTON CIRCLE<br>ROCHESTER NY 14612 |

— BASE COVERAGES AND PREMIUMS —

Insurance is provided where a premium entry is shown for the coverage.

| Location | | | | Limit of Liability | Premium |
|---|---|---|---|---|---|
| 001 | SECTION I | Coverage A - | Dwelling | $ 45,000 | $ 132.00 |
| | | Coverage B - | Other Structures | $ 0 | |
| | | Coverage C - | Personal Property | $ 30,000 | $ 75.00 |
| | | Coverage D - | Loss of Use | $ 12,000 | INCLUDED |
| | SECTION II | Coverage E - | Personal Liability (each occurrence) | $ 0 | |
| | | Coverage F - | Medical Payments (each person) | $ 0 | |

**ADDITIONAL COVERAGES** $ 25.00

COVERAGE EXTENSION ENDORSEMENT

**Deductible amount - SECTION I - $ 500.** In case of loss under SECTION I, we cover only that part of the loss over the deductible stated.

received
4-12-04

AGENT COPY

## CREDITS AND DEBITS

| Location | Title | | Premium |
|----------|-------|---|---------|
| 001 | CREDIT FOR DELETION OF SECTION II BASE COVERAGES | $ | -24.00 |
| 001 | CREDIT FOR PROTECTIVE DEVICES | $ | -2.00 |
| 001 | DEDUCTIBLE ADJUSTMENT | $ | -27.00 |
| 001 | OPERATION IDENTIFICATION CREDIT | $ | -9.00 |
| 001 | NON-SMOKERS CREDIT | $ | -9.00 |

## RATING INFORMATION

| Location | Territory | No. of Family | Premium Group | Year Built | Feet to Hydrant | Prot Class | Tier/ Price Pt |
|----------|-----------|---------------|---------------|------------|-----------------|------------|----------------|
| 001 | 37 | 1 | 029 | | 0500 | 04 | ST |

| Location | Primary Residence | Automatic Value-up at Renewal | Construction |
|----------|-------------------|-------------------------------|--------------|
| 001 | Y | N | FIRE RESISTIVE |

## DESCRIPTION OF ADDITIONAL COVERAGES, CREDITS AND DEBITS

CREDIT FOR DELETION OF SECTION II BASE COVERAGES
  SECTION II BASE COVERAGES ARE PROVIDED UNDER POLICY NUMBER PLPM330615.
COVERAGE EXTENSION ENDORSEMENT
  BASIC COVERAGE EXTENSION ONLY.
OPERATION IDENTIFICATION CREDIT
NON-SMOKERS CREDIT
PREMISES ALARM SYSTEM CREDIT
  PERCENTAGE IS 02.

## FORMS AND ENDORSEMENTS

Your insurance is comprised of the following forms:

| Form No. | Ed. Date | Form No. | Ed. Date | Form No. | Ed. Date |
|----------|----------|----------|----------|----------|----------|
| * HO0006 | 0491 | * HO2493 | 0200 | * 80-734 | 0196 |
| * HO2343 | 0491 | * 81-6NY | 0198 | * 80707NY | 0299 |
| * HO110 | 0387 | * HO0416 | 0491 | * HO103 | 0383 |

**THIS IS NOT A BILL. YOU WILL BE BILLED SEPARATELY. At your request, your account has been placed on a Direct Bill payment schedule which is based on ANNUAL     installments. Please do not send payment now. You will be receiving a separate invoice statement(s) based on the payment schedule that you selected.**

**Thank you for selecting us to service your insurance needs!**

Countersigned:          By _____          _____
                            Authorized Representative                    Date
                                                                          Date Issued: 05/23/200

HO (07/96)

05/20/2003    HP3M58770400              2405              PGDM560D  I28873    PPAFPPN  00014928 Page    4

**Insurance**
Member of Liberty Mutual Group

| Policy Number: HP3 M587704 | Prior Policy: |
|---|---|

**Policy Period:  05/20/2003    To:  05/20/2004    12:01 am Standard Time at the Mailing Address of the Named Insured**

**Coverage Is Provided In   EXCELSIOR INSURANCE COMPANY**

**Billing Type: DIRECT BILL           -          ANNUAL**

| Named Insured and Mailing Address: | Agent: |
|---|---|
| KARA PENNA LT<br>C/O RONALD M PENNA<br>86 BROOKLINE<br>ROCHESTER  NY   14616 | CHARLES M SCARPULLA AGENCY INC<br>1800 ENGLISH RD<br>ROCHESTER  NY   14616<br><br>Agent Code: 4810156     Agent Phone: (585)-225-4073 |

**Reason for Amendment:**

## STATEMENT OF ACCOUNT

| Acct<br>Date | Line of<br>Business | Coverage<br>Premium | Commission<br>Percent | Surcharge/<br>Assessment | Commission<br>Percent | Total<br>Due |
|---|---|---|---|---|---|---|
| 05/2003 | HOME | $      161.00 | 15.00% | | $ | 161.00 |

Total Premiums Charged:  $      161.00

Date Issued: 05/23/2003

AGENT COPY



Peerless
Insurance™
Member of Liberty Mutual Group

Coverage is provided in:

**EXCELSIOR INSURANCE COMPANY**

**This policy has been prepared for:**
KARA PENNA LT
C/O RONALD M PENNA
86 BROOKLINE
ROCHESTER  NY   14616

**Agent Name and Address:**

CHARLES M SCARPULLA AGENCY INC
1800 ENGLISH RD
ROCHESTER  NY   14616

**Agent Code:**  4810156

**Agent's Phone Number:** (585)-225-4073

**Your insurance policy is enclosed. Please place it with your important papers.**

Thank you for selecting us to service your insurance needs!



**Peerless Insurance** ™

Member of Liberty Mutual Group

| | |
|---|---|
| **Policy Number:** HP3M587704 | **Prior Policy:** |

**Policy Period:** 05/20/2003   **To:** 05/20/2004   12:01 am Standard Time at the Mailing Address of the Named Insured

**Coverage is Provided In   EXCELSIOR INSURANCE COMPANY**

**Billing Type:** DIRECT BILL   -   ANNUAL

| **Named Insured and Mailing Address:** | **Agent:** |
|---|---|
| KARA PENNA LT <br> C/O RONALD M PENNA <br> 86 BROOKLINE <br> ROCHESTER NY 14616 | CHARLES M SCARPULLA AGENCY INC <br> 1800 ENGLISH RD <br> ROCHESTER NY 14616 <br><br> **Agent Code:** 4810156   **Agent Phone:** (585)-225-4073 |

## HOMEOWNERS POLICY

### ———————————— PREMIUM SUMMARY ————————————

**THIS IS NOT A BILL. YOU WILL RECEIVE A SEPARATE BILL FOR THIS TRANSACTION.**

| | | | |
|---|---|---|---|
| Reason for Transaction | NEW BUSINESS | Base Coverage Premium | $ 207.00 |
| Transaction Effective Date | 05/20/2003 | Additional Coverage Premium | $ 25.00 |
| Premium For This Transaction | $ 161.00 | Credits and Debits | $ -71.00 |
| | | Total Policy Premium | $ 161.00 |

### ———————————— PROPERTY LOCATION ————————————

The property insured is located at the mailing address except as follows:

| Location | Address |
|---|---|
| 001 | 58 ELLINGTON CIRCLE <br> ROCHESTER NY 14612 |

### ———————————— BASE COVERAGES AND PREMIUMS ————————————

Insurance is provided where a premium entry is shown for the coverage.

| Location | | | | Limit of Liability | Premium |
|---|---|---|---|---|---|
| 001 | SECTION I | Coverage A - | Dwelling | $ 45,000 | $ 132.00 |
| | | Coverage B - | Other Structures | $ 0 | |
| | | Coverage C - | Personal Property | $ 30,000 | $ 75.00 |
| | | Coverage D - | Loss of Use | $ 12,000 | INCLUDED |
| | SECTION II | Coverage E - | Personal Liability (each occurrence) | $ 0 | |
| | | Coverage F - | Medical Payments (each person) | $ 0 | |

**ADDITIONAL COVERAGES**

| | | |
|---|---|---|
| COVERAGE EXTENSION ENDORSEMENT | | $ 25.00 |

Deductible amount - SECTION I - $   500. In case of loss under SECTION I, we cover only that part of the loss over the deductible stated.

HO (07/96)

---------------- HOMEOWNERS POLICY ---------------- CONTINUED ----------------

--------------------- CREDITS AND DEBITS ---------------------

| Location | Title | | Premium |
|----------|-------|---|---------|
| 001 | CREDIT FOR DELETION OF SECTION II BASE COVERAGES | $ | -24.00 |
| 001 | CREDIT FOR PROTECTIVE DEVICES | $ | -2.00 |
| 001 | DEDUCTIBLE ADJUSTMENT | $ | -27.00 |
| 001 | OPERATION IDENTIFICATION CREDIT | $ | -9.00 |
| 001 | NON-SMOKERS CREDIT | $ | -9.00 |

--------------------- RATING INFORMATION ---------------------

| Location | Territory | No. of Family | Premium Group | Year Built | Feet to Hydrant | Prot Class | Tier/ Price Pt |
|----------|-----------|---------------|---------------|------------|-----------------|------------|----------------|
| 001 | 37 | 1 | 029 | | 0500 | 04 | ST |

| Location | Primary Residence | Automatic Value-up at Renewal | Construction |
|----------|-------------------|-------------------------------|--------------|
| 001 | Y | N | FIRE RESISTIVE |

------------ DESCRIPTION OF ADDITIONAL COVERAGES, CREDITS AND DEBITS ------------

CREDIT FOR DELETION OF SECTION II BASE COVERAGES
   SECTION II BASE COVERAGES ARE PROVIDED UNDER POLICY NUMBER PLPM330615.
COVERAGE EXTENSION ENDORSEMENT
   BASIC COVERAGE EXTENSION ONLY.
OPERATION IDENTIFICATION CREDIT
NON-SMOKERS CREDIT
PREMISES ALARM SYSTEM CREDIT
   PERCENTAGE IS 02.

--------------------- FORMS AND ENDORSEMENTS ---------------------

Your insurance is comprised of the following forms:

| Form No. | Ed. Date | Form No. | Ed. Date | Form No. | Ed. Date |
|----------|----------|----------|----------|----------|----------|
| * HO0006 | 0491 | * HO2493 | 0200 | * 80-734 | 0196 |
| * HO2343 | 0491 | * 81-6NY | 0198 | * 80707NY | 0299 |
| * HO110 | 0387 | * HO0416 | 0491 | * HO103 | 0383 |

THIS IS NOT A BILL. YOU WILL BE BILLED SEPARATELY. At your request, your account has been placed on a Direct Bill payment schedule which is based on ANNUAL installments. Please do not send payment now. You will be receiving a separate invoice statement(s) based on the payment schedule that you selected.

Thank you for selecting us to service your insurance needs!

Countersigned:    By _____
                  Authorized Representative

_____
Date
Date Issued: 05/23/2003

HO (07/96)

# IMPORTANT FLOOD INSURANCE NOTICE

Your homeowners or dwelling policy does NOT provide coverage for loss caused by flood or mudslide, which is defined, in part, by the National Flood Insurance Program as:

> A general and temporary condition of partial or complete inundation of normally dry land areas from overflow of inland or tidal waters or from the unusual and rapid accumulation or runoff of surface waters from any source.

If you are required by your mortgage lender to have flood insurance on your property, or if you feel that your property is susceptible to flood damage, insurance covering damage from flood is available on most buildings and contents in participating communities through the National Flood Insurance Program.

Information about flood insurance and whether your community participates in the program can be obtained from your insurance company, from your insurance agent/broker, or directly from the National Flood Insurance Program by calling 1-800-638-6620.

INSURED COPY

# NOTIFICATION OF INFORMATION PRACTICES

## Protecting your right to privacy

You have a right to privacy, and we are concerned about protecting this right. Although we encourage you to read this entire document, we have provided a summary of the law in the following six statements:

1. We must inform you of our information-gathering practices.

2. If we order an investigative consumer report, you may request to be interviewed.

3. You may have access to recorded personal information that we may have.

4. You have a right to correct, amend or delete recorded personal information.

5. You have a right to know the reason for an adverse underwriting decision.

6. We have limited rights to disclose personal information about you.

## What Kind of Information is Collected About You

In order to evaluate people or property for insurance properly, we need to collect certain information. As our customer, we believe you should know about our information practices.

You are the primary source of our information. The application which you complete with your agent generally tells us what we need to know. In the event that additional information is needed to complete your application, we will attempt to obtain this by contacting you through your agent.

For automobile insurance, we order motor vehicle records which contain information about accidents and violations. We may also order a consumer information report from an independent insurance support organization. The information contained in these reports would relate to your driving record, use of the automobile and other similar details.

On insurance for homes, boats, recreational vehicles and other personal property, we may order a similar consumer information report to determine the condition of the property and the accuracy of the information you furnished on your application. These reports frequently include a photograph of the property to be insured.

In certain situations, we may request an investigative consumer report be prepared. Certain information in this report may be obtained through direct contact with you, family members and/or contact with neighbors and associates. If we request an investigative consumer report, you have the right to be personally interviewed by them. If you want to be interviewed, please advise your agent to notify us; every effort will be made to interview you. You also have a right to obtain a copy of the report. You may do this by contacting your agent or our nearest office (specifically, the underwriting company as indicated on your declarations). You may also personally review the report by contacting the independent insurance support organization. We will give you the name and location of the insurance support organization upon written request.

Information gathered in these investigative reports is maintained by us and used or disclosed only as permitted by law. These reports, however, may be shared by the insurance support organization with other companies who use the same insurance support organization.

INSURED COPY

## Who Has Access to Information About You

Under the law, we may share information about you contained in our files only with certain persons or organizations without your prior authorization. The types of persons or organizations with whom we may share this information include those who perform a business function for us, for example, businesses that help us with data processing; another insurance company, for example, a reinsurance company; agent or consumer reporting agency; and medical professional (to inform the individual of a medical problem). We may also share information for the purpose of conducting scientific research, marketing a product or service, the marketing of an insurance service or product by an affiliate, determining eligibility for benefits or payments under a policy, responding to requests by regulatory authorities or for other purposes permitted by law.

Upon your request, we will provide you with a more complete description of the circumstances under which personal information may be disclosed without your prior authorization.

## How You Can Find Out What Information We Have About You

Upon written request to us, you have a right to either see and copy in person (or obtain a copy from us by mail) of whatever recorded personal information we have about you in our files. You must properly identify yourself when making this written request by supplying us with your full name, address and policy number, if applicable. We will, within thirty (30) business days from the date we receive your request, allow you to see and copy this information in person or send you a copy of the information if it is reasonably locatable and retrievable by us.

We will also tell you the identity, if known, of those persons to whom we have disclosed this personal information within the two years prior to your request. If the identity of such persons is not known, we will tell you the names of the persons to whom we normally disclose such information.

There are some kinds of information, however, that we are not required to give you access to. This type of information is generally collected when we evaluate a claim under an insurance policy or when the possibility of a lawsuit exists.

You have a right to make a written request of us to correct, amend or delete any recorded personal information about you in our possession. If you make such a written request, we will, within thirty (30) business days from the date we receive it, correct, amend or delete the portion of the recorded personal information that you dispute; or notify you of our refusal to do so, the reasons for refusal and your right to file a supplementary statement disagreeing with our refusal.

If we agree to correct, amend or delete the recorded personal information in our possession about you, we will notify you in writing. We will furnish the correction, amendment or deletion to any person you specifically designate who may have, within the preceding two years, received the information from us. The correction, amendment or deletion will also be furnished to any insurance support organization which systematically receives such information with the information that has been corrected, amended or deleted.

If we refuse to correct, amend or delete the recorded personal information according to your request, you have the right to file a concise statement setting forth what you think is the correct, relevant, or fair information, and the reasons why you disagree with our refusal to correct, amend or delete the information. If you file either statement' we will file the statement with the disputed information so that anybody reviewing the disputed information will be made aware of your statement and have access to it. We will also, in any subsequent disclosure of the disputed information, clearly identify the matters in dispute and provide your statement along with the information being disclosed. We will also furnish your statement to any persons or insurance support organization to whom we previously provided the personal information in dispute.

## Questions regarding our privacy procedures

Should you have any questions about our procedures or information contained in your file, please contact your agent or our nearest office (specifically, the underwriting company as indicated on your declarations).

INSURED COPY

# IMPORTANT POLICYHOLDER NOTICE
# CONCERNING BODILY INJURY LIABILITY CLAIMS REPORTING

**Dear Policyholder:**

**Timely reporting of bodily injury claims has been proven to lower claim costs. Lower claim costs help reduce the overall amount that policyholders must pay for an insurance policy.**

That is why Peerless Insurance offers ANYTIME™ Claim Reporting services 24 hours a day to our customers. Please call 1-800-522-7152 to report all claims.

When reporting a claim through the ANYTIME™ *Claim Reporting* service, please have the following information available:

• Policy number;
• The policyholder's name and address;
• Claim information (date, time and description of loss);
• Injured party information (name, address, social security number, DOB, marital status, and dependent); and
• Injury information (injury type and medical facility initiating treatment).

Remember, **Timely Notice** of claims can:

• Reduce litigation activities and costs;
• Enhance medical care process; and
• Mitigate lost time and speed recovery.

**Please report all claims within 24 hours of the occurrence, especially ones involving bodily injury.**

**Thank you for selecting us to service your insurance needs!**

INSURED COPY

# IMPORTANT POLICYHOLDER NOTICE
## CONCERNING THE PROPERTY INSURANCE LOSS REGISTER

If a claim is filed on the insured property, information on the claim may be given to the Property Insurance Loss Register (PILR) for use by insurance companies in investigating the legitimacy of that claim as well as other claims for loss on the property. Information which will be given to PILR may include the insureds name, age and sex, current and previous addresses, loss location, insurance policy information, cause of loss, type of property, and identification of others who have an interest in the property or who are involved in the claimed loss.

Such information may be collected by an insurer or an adjuster by questioning you, your spouse, others who have an interest in the property, those who are involved in the claimed loss, and fire department personnel. Information on you will be given by PILR to insurance companies which subscribe to its service for use in investigating other claimed losses.

On request, PILR will tell you whether it has information on you. It will let you see and copy such information (in person or by mail) or give you the nature and substance of such information by telephone. PILR may charge a reasonable fee for copies of information provided.

If you think information on you is incomplete or inaccurate, you may request PILR to make corrections. PILR will then investigate and:

1.  give your correction to subscribers who previously received such information; or

2.  inform you that it refuses to make your correction and give you its reason.

If PILR refuses to make your correction, you can have a statement of the reasons for your disagreement placed in PILR; and all subscribers who received or will receive information on you will also receive a copy of the statement. Information on your claim will normally be stored by PILR for five (5) years.

Inquires to PILR should be addressed:      **Property Insurance Loss Register**
**PO Box 2641**
**Jersey City, NJ 07310**

**Telephone: 201-469-2000**

Thank you for selecting us to service your insurance needs!

ST-ML-232 (07/01)                                                                                              Page 1 of 1

INSURED COPY

# IMPORTANT POLICYHOLDER INFORMATION
## CONCERNING BILLING PRACTICES

**Dear Valued Policyholder:** This insert provides you with important information about our policy billing practices that may affect you. Please review it carefully and contact your agent if you have any questions.

---

**Premium Notice:** We will mail you a policy Premium Notice separately. The Premium Notice will provide you with specifics regarding your agent, the account and policy billed, the billing company, payment plan, policy number, transaction dates, description of transactions, charges/credits, policy amount balance, minimum amount, and payment due date. This insert explains fees that may apply to and be shown on your Premium Notice.

**Available Premium Payment Plans:**

- **Annual Payment Plan:** When this plan applies, you have elected to pay the entire premium amount balance shown on your Premium Notice in full. No installment billing fee applies when the Annual Payment Plan applies.

- **Installment Payment Plan:** When this plan applies, you have elected to pay your policy premium in installments (e.g.: quarterly or monthly installments – Installment Payment Plans vary by state). As noted below, an installment fee may apply when the Installment Payment Plan applies.

The Premium Payment Plan that applies to your policy is shown on the top of your Premium Notice. It is also shown on your Policy Declarations. Please contact your agent if you want to change your Payment Plan election.

**Installment Payment Plan Fee:** If you elected to pay your premiums in installments using the Installment Premium Payment Plan, an installment billing fee applies to each installment bill. The installment billing charge will not apply, however, if you pay the entire balance due when you receive the bill for the first installment. Because the amount of the installment charge varies from state to state, please consult your Premium Notice for the actual fee that applies.

**Dishonored Payment Fee:** Your financial institution may refuse to honor the premium payment withdrawal request you submit to us due to insufficient funds in your account or for some other reason. If that is the case, and your premium payment withdrawal request is returned to us dishonored, a payment return fee will apply. Because the amount of the return fee varies from state to state, please consult your Premium Notice for the actual fee that applies.

**Late Payment Fee:** If we do not receive the minimum amount due on or before the date or time the payment is due, as indicated on your Premium Notice, you will receive a policy cancellation notice effective at a future date that will also reflect a late payment fee charge. Issuance of the cancellation notice due to non-payment of a scheduled installment(s) may result in the billing and collection of all or part of any outstanding premiums due for the policy period. Because the amount of the late fee varies from state to state, please consult your Premium Notice for the actual fee that applies. (Late Payment Fees are not applicable in some states.)

---

**Special Note:** Please note that some states do not permit the charging of certain fees. Therefore, if your state does not allow the charging of an Installment Payment Plan, Dishonored Payment or Late Payment Fee, the disallowed fee will not be charged and will not be included on your Premium Notice.

---

Once again, please contact your agent if your have any questions about the above billing practice information.

**Thank you for selecting us to service your insurance needs.**

INSURED COPY

# ANYPAY PROGRAM
## THE ELECTRONIC PAYMENT OPTION

### Why ANYPAY?

**One less check to write, one less stamp to buy, one less bill to mail...**

We now offer ANYPAY (Electronic Funds Transfer (EFT)), the fast convenient way to pay your insurance premiums by Automatic Checking Withdrawal or our special one-time withdrawal.

If you want to maintain control of your account but don't want to write a check, you can use the ANYPAY system to withdraw your payment anytime you receive your bill.

Payment Security: When you choose ANYPAY to make your premium payments, you will never need to worry about the security of your payment. We work through your bank and can only deduct the amount authorized – and nothing more.

### Frequently Asked Questions

**Q. How does EFT Work?**

**A.** With your authorization, your insurance premium will be transferred from the checking account of your choice either in full, or on a monthly or quarterly basis.

**Q. How do I know my bill is paid?**

**A.** Your payment information is itemized on your checking account statement.

**Q. With automatic withdrawal, how do I plan my finances to ensure I will have enough money in my account on the date the payment will be withdrawn?**

**A.** When you enroll in the ANYPAY program you may select the date for the withdrawal amount. Your payment will then be made on the same date of each month so that you can plan accordingly. If you are still concerned, we provide an option during enrollment that will allow you to receive a notice ten days in advance of each deduction.

**Q. How much does EFT cost?**

**A.** Fees vary by state, but in all cases result in an overall savings over the standard installment fees.

**Q. How do I enroll in ANYPAY?**

**A.** You may enroll in ANYPAY by completing the worksheet on the reverse side and then call our toll free number, 1-877-659-0096, to place your policy on automatic withdrawal or have your current installment taken out of your checking account.

SEE REVERSE SIDE FOR ENROLLMENT FORM

# ANYPAY ENROLLMENT WORKSHEET

**Instructions:**

Enrolling in the ANYPAY program is fast and easy. This worksheet will help you in preparing for enrollment. The information contained is required for enrollment and lists the options in the same order as the Voice Response Unit will prompt you for the information to be entered. Please take the time to complete the worksheet before calling us to ensure a smooth enrollment process. Once you have completed the worksheet, you may enroll by calling **1-877-659-0096** and following the instructions. You may enroll at anytime during the policy period.

1. **Policy Number:** Please enter your policy number located in the top left hand corner of your policy declaration page ..................................................................

2. **Payment Intervals:** You need to choose between having regularly scheduled withdrawals taken or doing a one-time payment withdrawal.
   - If you would like to set up an account authorizing regularly scheduled withdrawals, select "**1**" and continue on with completing the remainder of the worksheet ...........................................................
   - If you would like to do a one-time payment withdrawal, select "**2**" and complete items 3, 4 and 8 of the Worksheet ..............................................................................................................................

3. **Bank Routing Number:** You will need the bank routing number that appears at the bottom of your check. It is the first nine (9) digits reading from left to right. Please be sure not to include any digits that represent the check number that may follow the bank routing number (this is common with commercial/business accounts) ..............................................................................

4. **Checking Account Number:** This is the series of numbers that immediately follow the bank routing number. Again please be sure not to include any digits that represent the check number that may be listed after the checking account number ..............................................................................

5. **Date of Withdrawal:** You will be asked to specify the day of the month that you would like your payments withdrawn from your checking account. You can choose the 1st day of the month by selecting "**1**", the 15th day of the month by choosing "**2**" or the 28th day of the month by choosing "**3**". If the withdrawal date selected is within ten days of the date of enrollment, the withdrawal will be taken the following month. Policies enrolled on a monthly pay plan may have a duplicate payment taken on the first withdrawal .........

6. **Payment Option:** You will need to choose the selected intervals in which you would like to have withdrawals taken from your checking account. For monthly withdrawals select "**1**". For quarterly withdrawals select "**2**". For full policy balance to be withdrawn select "**3**". ....................................................................................

7. **Notification of Withdrawal:** You will be asked when you want to receive notices of withdrawal from the company. You have two possible choices. By selecting "**1**", you will be notified only when there is a change in withdrawal amount in excess of $3.00. By selecting "**2**", you will be notified of every withdrawal made against your checking account ...........................................................................................

8. **Authorization:** In order for the company to be able to withdraw funds from your checking account, we need your authorization. You will be prompted to re-enter your policy number and to also enter your five (5) digit zip code. Your policy number will be the same number used in item one, and your zip code should be your mailing address zip code.

   Policy number: ☐☐☐☐☐☐☐☐☐☐☐

   Zip Code: ☐☐☐☐☐

**Peerless Insurance**
Member of Liberty Mutual Group

# PEERLESS INSURANCE
## PRIVACY PRACTICES
### OUR COMMITMENT TO OUR CUSTOMERS

When you apply for any type of insurance, you disclose information about yourself. The collection, use and disclosure of such information is regulated by law. Peerless Insurance invites you to conduct business with us knowing that we protect your personal information.

Peerless Insurance affiliated companies* restrict access to personal information about you to those employees who need to know that information to provide products or services to you. We also maintain physical, electronic and procedural safeguards that comply with state and federal regulations to protect your personal information.

1. **PERSONAL INFORMATION COLLECTED FROM OR ABOUT YOU**

   We collect information from you, or from third parties about you, as part of the insurance application and servicing process, for example:

   - Information we receive from you on applications and other forms such as your name, address, phone number, household and driver information;
   - Information about your transactions with us and our service providers such as accident information or medical information related to claims;
   - Information we receive from consumer reporting agencies, Motor Vehicle Departments, and inspection services; and
   - Information from visitors to Peerless Insurance's web-site.

   We use the information we collect to issue and administer insurance policies, process insurance benefits and claims, and provide services we think may be of interest to you. We also use the information as otherwise required or permitted by Federal or State law.

2. **SHARING INFORMATION GATHERED**

   We may share information about you in the normal business of conducting insurance operations, such as providing you with an insurance quote, processing, servicing, and administering your insurance policy and your claims. We are permitted by law to share information about you when you become a Peerless Insurance customer or claimant, with, for example:

   - A third party that performs services for us, such as claims investigations, appraisals, or the detection of fraud or misrepresentations;
   - Any of our affiliated companies;
   - Insurance regulatory authorities and reporting agencies;
   - Your State Motor Vehicle Department to obtain a report of any accidents or convictions;
   - Law enforcement agencies or other governmental authorities to report suspected illegal activities;
   - Persons or organizations conducting insurance actuarial or research studies, subject to appropriate confidentiality agreements; and
   - As otherwise permitted or required by law.

   We are also permitted by law to disclose the following information to companies that perform marketing services on our behalf or with which we have joint marketing agreements, including:

   - Information we receive from you on applications or other forms, such as your name, address, social security number, insurance coverage, vehicle and driver information, and certain claims information;
   - Information about your transactions with us, our affiliates or others, such as your insurance coverage, vehicle and driver information, and claim information; and

---

*This Privacy Notice is provided on behalf of the Peerless Insurance affiliated companies that provide personal automobile, homeowners, umbrella, dwelling fire, watercraft and farm insurance products and services. Peerless Insurance affiliated companies are: **Peerless Insurance Company, Excelsior Insurance Company, The Netherlands Insurance Company, Indiana Insurance Company, Atlas Assurance Company of America** and **America First Insurance Company**.*

- Information we receive from third parties such as a consumer reporting agency, or your motor vehicle records and claims history.

Where permitted by law, we may also disclose the nonpublic personal information described above to non-affiliated third parties in order to provide you with information about products or services that may be of interest to you. We do not sell any customer information to mailing list companies or telemarketing companies.

### 3. PROTECTING INFORMATION GATHERED

We restrict access to nonpublic personal information about you to those employees and agents who need to know that information to provide products or services to you and to conduct our internal operations. This information is kept internal to Peerless Insurance except when required or permitted by law and is not available to the general public. We maintain physical, electronic, and procedural safeguards that comply with applicable regulations to guard your nonpublic personal information. Peerless Insurance retains the information collected for as long as required by law or regulation.

### 4. NOTICE & EXPLANATION OF OPT-OUT OPTION

We may share nonpublic personal information about you with nonaffiliated third parties. If you prefer that we not disclose nonpublic personal information about you to nonaffiliated third parties (other than disclosures permitted or required by law), you may direct us not to make those disclosures. If you wish to opt-out of disclosures to nonaffiliated third parties, you may check (X) the box on the following "PRIVACY INFORMATION OPT-OUT FORM" and return the form to us at the address specified on the form.

---

### PRIVACY INFORMATION OPT-OUT FORM

If you prefer that we not disclose nonpublic personal information about you to nonaffiliated third parties (other than disclosures permitted or required by law), you may direct us not to make those disclosures by checking (X) the box below, providing the requested customer identification information and returning this completed form to:

**Peerless Insurance**
**Attn: Privacy Coordinator**
**Post Office Box 507**
**Keene, NH 03431-0507**

☐ Do not disclose nonpublic personal information about me to non-affiliated third parties except when permitted or required by law.

---

**IMPORTANT NOTES:**

- **Please complete the following customer identification information. Allow 4 to 6 weeks for these changes to take effect. Once your request has been processed, it will remain in effect until you request a change.**
- **We are required to provide this privacy information to you on each renewal of your policy. When we do, there is no need to complete and return another form to us if you have already done so.**
- **Please report all address or other policy changes to your independent insurance agent for processing. Please do not enclose any address or policy change requests, other correspondence or premium payment checks in the envelope used to return this form to us.**

---

CUSTOMER IDENTIFICATION INFORMATION

NAME: _____

ADDRESS: _____

CITY: _____ STATE: _____ ZIP: _____

TELEPHONE NUMBER: _____ POLICY NUMBER (Required): _____

SIGNATURE: _____ DATE: _____

Thank you for selecting us to service your insurance needs!

## SECTION II - ADDITIONAL COVERAGES

**9.** Under **3. Damage to Property of Others**, item **b.** is deleted.

All other provisions of this policy apply.

INSURED COPY

# HOMEOWNERS
# POLICY

# YOUR HOMEOWNERS POLICY QUICK REFERENCE

### DECLARATIONS PAGE

Your Name
Location of Your Residence
Policy Period
Coverages
Amount of Insurance
Deductible

| | Beginning On Page |
|---|---|
| **AGREEMENT** | 1 |
| **DEFINITIONS** | 1 |
| **SECTION I - PROPERTY COVERAGES** | 2 |
| **COVERAGE A**- Dwelling | 2 |
| **COVERAGE B** - Other Structures | 2 |
| **COVERAGE C** - Personal Property | 2 |
| Property Not Covered | 3 |
| **COVERAGE D** - Loss of Use | 3 |
| **ADDITIONAL COVERAGES** | 4 |
| Debris Removal | 4 |
| Reasonable Repairs | 4 |
| Trees, Shrubs and Other Plants | 4 |
| Fire Department Service Charge | 4 |
| Property Removed | 4 |
| Credit Card, Fund Transfer Card. Forgery and Counterfeit Money | 4 |
| Loss Assessment | 5 |
| Collapse | 5 |
| Glass or Safety Glazing Material | 5 |
| Landlord's Furnishings | 5 |
| **SECTION I - PERILS INSURED AGAINST** | 6 |
| **COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES** | 6 |
| **COVERAGE C - PERSONAL PROPERTY** | 7 |
| **SECTION I – EXCLUSIONS** | 8 |
| **SECTION I - CONDITIONS** | 9 |
| Insurable Interest and Limit of Liability | 9 |
| Your Duties After Loss | 9 |
| Loss Settlement | 9 |
| Loss to a Pair or Set | 10 |
| Glass Replacement | 10 |
| Appraisal | 10 |
| Other Insurance | 11 |
| Suit Against Us | 11 |
| Our Option | 11 |
| Loss Payment | 11 |
| Abandonment of Property | 11 |
| Mortgage Clause | 11 |
| No Benefit to Bailee | 11 |
| Nuclear Hazard Clause | 11 |
| Recovered Property | 11 |
| Volcanic Eruption Period | 11 |

INSURED COPY

# HOMEOWNERS AMENDATORY PROVISIONS - NEW YORK
# Form HO 00 06

**This endorsement changes your policy form HO 00 06. Please read it carefully.**

---

## DEFINITIONS

---

1. Item **1.** "Bodily injury" is deleted and replaced by the following:

   **1.** "Bodily injury" means:

   **a.** "Personal injury";

   **b.** Bodily harm, sickness or disease, including required care, loss of services and death that results.

2. Item **5.** "Occurrence" is deleted and replaced by the following:

   **5.** "Occurrence" means an offense or accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period in:

   **a.** "Bodily injury"; or

   **b.** "Property damage".

3. Item **9.** "Personal injury" is added as follows:

   **9.** "Personal injury" means injury arising out of one or more of these offenses:

   **a.** False arrest, detention or imprisonment, malicious prosecution, wrongful entry or eviction; or

   **b.** Libel, slander, defamation of character or invasion of privacy;

---

## SECTION I - PROPERTY COVERAGES

---

4. Under **ADDITIONAL COVERAGES**, item **1. Debris Removal**, the following paragraph is added:

   We will pay your reasonable expense, up to $100 for the removal of trees, shrubs, and plants when damaged by windstorm or hail and there is no damage to a covered structure. $100 is the most we will pay for any one "occurrence", regardless of the number of damaged trees, shrubs, or plants.

5. Under **ADDITIONAL COVERAGES**, item **4. Fire Department Service Charge** is deleted and replaced by the following:

   **4.** Fire Department Service Charge. When the fire department is called to save or protect covered property from a Peril Insured Against, we will pay up to $500 for fire department charges:

   **a.** Assumed by contract or agreement prior to loss; or

   **b.** Required by local ordinance.

   This coverage is additional insurance. No deductible applies to this coverage.

Includes copyrighted material of Insurance Services Office, with its permission
Copyright, Insurance Services Office, Inc., 1990

INSURED COPY

**SECTION II - EXCLUSIONS**

6. Under **1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others,** item **b.** is deleted and replaced by the following:

   **b.** Arising out of or in connection with a "business" engaged in by an "insured". This exclusion applies but is not limited to:

   **(1)** An act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

   **(2)** The "business" pursuits of the "insured" in connection with a "business" owned or financially controlled by the "insured" or by a partnership of which the "insured" is a partner or member;

   This exclusion does not apply to an "insured" while engaged in:

   **(1)** The providing of home day care services to a relative;

   **(2)** The mutual exchange of home day care services;

   **(3)** Volunteer activities performed without pay for a non-profit organization or corporation;

   **(4)** Occasional or part-time "business" activities such as: newspaper delivery, babysitting, caddying or lawn care, if the "insured" is under 21 years old and a resident of your household; or

   **(5)** Incidental farming activities such as: the growing or raising of produce, livestock, or poultry for personal use, but not for sale.

7. Under **1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others,** item **m.** is added as follows:

   **m.** Arising from any act or failure to act by any "insured" as a director or officer of any corporation or organization.

   This exclusion does not apply to activities an "insured" performs without pay as:

   **(1)** A director, officer or trustee of a non-profit corporation or organization, or

   **(2)** An elected director, officer or trustee on behalf of a corporation or association of property owners;

8. Under **2. Coverage E - Personal Liability,** item **g.** is added as follows:

   **g.** "Personal injury":

   **(1)** Caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an "insured";

   **(2)** Caused by discrimination; or

   **(3)** Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by the "insured";

   **(4)** Caused by the political or government activities of an "insured";

   **(5)** As a result of an advertising, broadcasting or telecasting offense by or on behalf of an "insured"

This coverage does not:

**a.** Increase the limit of liability applying to the damaged property; or

**b.** Apply if the loss is caused by the negligence of an "insured".

**9. Waterbed Damage Coverage.** We will pay under Coverage A and C for damage caused by a sudden and accidental discharge of water from a waterbed.

---

## SECTION I - PERILS INSURED AGAINST

---

Under **Coverage A - Dwelling and Coverage B - Other Structures**, the following is added to item **2.**:

Exclusion **2.e.(2)** as respects loss caused by mechanical breakdown does not apply to Additional Coverage **8.** Water Backup of Sewers and Drains within this endorsement.

As respects form HO 00 06, this amendment applies to Unit-Owners Special Coverage Endorsements HO 23 19 and HO 23 25.

---

## SECTION I - EXCLUSIONS

---

Under item **1.c. Water Damage**:

Subparagraph **1.c.(2)** is deleted.

The following paragraph is added:

Direct physical loss to covered property involving the collapse of a building or part of a building caused by **1.c.(3)** above is covered.

As respects forms HO 00 02, HO 00 04 and HO 00 06, the above amendments apply under **3. Water Damage**, items **3.b.** and **3.c.** respectively.

---

## SECTION II - ADDITIONAL COVERAGES

---

Under **1. Claim Expenses**, item **1.c.** is deleted and replaced by the following:

**c.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $125 per day, for assisting us in the investigation or defense of a claim or suit; and

The following Additional Coverages are added:

**1. Damage to Property of Others.** We will pay up to $500 under Section II - Additional Coverage **3.** Damage to Property of Others for a covered loss.

The limit of $500 is the most we will pay under this endorsement with respect to any one loss.

This coverage is additional insurance.

**2. Loss Assessment.** We will pay up to $4000 under Section II - Additional Coverage **4.** Loss Assessment for a covered loss.

The limit of $4000 is the most we will pay under this endorsement with respect to any one loss regardless of the number of assessments.

This coverage is additional insurance.

All other provisions of this policy apply.

**80-707NY (02/99)**

INSURED COPY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WORKERS' COMPENSATION
### Certain Residence Employees – New York

We agree with respect to covered "residence employees":

## WHO IS COVERED

A covered "residence employee" under this endorsement is a "residence employee" who is engaged in regular employment of less than 40 hours per week or is engaged in casual employment.

However, as stated in New York Insurance Law Section 3420(j)(1), coverage does not apply to an employee who is not required, under New York Workers' Compensation Law, to be covered. Attachment of this endorsement does not constitute a voluntary election of coverage under New York Workers' Compensation Law.

## UNDER COVERAGE I

To pay when due all benefits required of an "insured" by the New York Workers' Compensation Law; and

## UNDER COVERAGE II

To pay on behalf of an "insured" all damages for which the "insured" is legally liable because of "bodily injury" sustained by a covered "residence employee". The "bodily injury" must be caused by accident or disease and arise out of and in the course of employment by the "insured" while:

a. In the United States of America, its territories or possessions, or Canada, or

b. Temporarily elsewhere if the covered "residence employee" is a citizen or resident of the United States or Canada.

## APPLICATION OF COVERAGE

This insurance applies only to "bodily injury" which occurs during the policy period. If the "bodily injury" is a disease, it must be caused or aggravated by the conditions of the covered "residence employee's" employment by the "insured".

The covered "residence employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury" by disease must occur during the policy period.

## POLICY PROVISIONS

This insurance is subject to all the provisions of this endorsement and the following provisions of this policy:

a. Under Sections I and II – Conditions:

    4. Waiver or Change of Policy Provisions.

    5. Cancellation.

    7. Assignment.

    8. Subrogation.

b. Under Section II – Conditions:

    3. Duties After Loss.

    6. Suit Against Us.

    7. Bankruptcy of an Insured.

c. Our agreement to defend the "insured" as provided under Coverage **E** – Personal Liability.

d. Under Section II – Additional Coverages:

    1. Claim Expenses.

e. The definition of "bodily injury", "business", "insured" and "residence employee".

Copyright, Insurance Services Office, Inc., 2000

HO 24 93 02 00

INSURED COPY

## ADDITIONAL PROVISIONS APPLICABLE TO COVERAGE I

The following provisions are applicable to Coverage I:

**a.** As between the covered "residence employee" and us, notice to or knowledge of the occurrence of the injury on the part of an "insured" will be deemed notice or knowledge on our part.

**b.** The jurisdiction of an "insured" will, for the purpose of the law imposing liability for compensation, be our jurisdiction.

## ADDITIONAL PROVISIONS APPLICABLE TO COVERAGE II

Coverage II does not apply to any suit brought in or judgment rendered by any court outside the United States of America, its territories and possessions, or Canada, or to any action on such judgment.

## LIMITS OF LIABILITY COVERAGE II

We may not limit our liability to pay damages for which we become legally liable to pay because of "bodily injury" to an "insured's" covered "residence employees" if the "bodily injury" arises out of and in the course of employment that is subject to and is compensable under the Workers' Compensation Law of New York.

## OTHER INSURANCE

If a loss covered by this insurance is also covered by other insurance, we will not pay more than our share of benefits and costs. The shares of all applicable insurance will be equal until the loss is paid. However, if a loss covered by this insurance is also covered by insurance written to cover business employees of an "insured" who is a sole proprietor, this insurance is primary.

## CONFORMITY TO STATUTE

If any term of this insurance is in conflict with the New York Workers' Compensation Law, such term is amended by this statement to conform to that law.

## EXCLUSIONS

This policy does not apply:

**a.** To liability for "bodily injury" arising out of "business" pursuits of an "insured".

**b.** Under Coverage II:

   **1.** To liability assumed by the "insured" under any contract or agreement.

   **2.** To any obligation under a workers' compensation, unemployment or disability benefits law or any similar law.

   **3.** To punitive or exemplary damage because of "bodily injury" to a covered "residence employee" employed in violation of law.

   **4.** To "bodily injury" to a covered "residence employee" employed in violation of law with the knowledge of an "insured".

   **5.** To "bodily injury" intentionally caused or aggravated by an "insured".

   **6.** To damages arising out of the unlawful discharge or coercion of, or unlawful discrimination against, a covered "residence employee".

Copyright, Insurance Services Office, Inc., 2000

INSURED COPY

HO 24 93 02 00

# HOMEOWNERS POLICY
## SPECIAL PROVISIONS – NEW YORK

**This endorsement changes the policy. Please read it carefully.**

Under **SECTION I - PROPERTY COVERAGES, ADDITIONAL COVERAGES, 6. Credit Card, Fund Transfer Card, Forgery and Counterfeit Money,** the first sentence is deleted and replaced by the following:

We will pay up to $1,000 for:

Under **SECTION I - PERILS INSURED AGAINST, COVERAGE A - DWELLING** and **COVERAGE B - OTHER STRUCTURES, 2. e. (5)** is deleted and replaced by the following:

**Special Coverage Form HO 00 03 only.**

    **(5)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

Under **SECTION I - EXCLUSIONS, 8. Intentional Loss** is deleted and replaced by the following:

**8.  Intentional Loss.** We do not provide coverage for an "insured" who commits or directs an act with the intent to cause a loss.

**(This is Item 1.h. in Form HO 00 03)**

Under **SECTION I - CONDITIONS, 8. Suit Against Us** is deleted and replaced by the following:

**8.  Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within two years after the date of loss.

Under **SECTION II - LIABILITY COVERAGES, Coverage E, Personal Liability, 2.** is deleted and replaced by the following:

**2.  **Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

Under **SECTION II - EXCLUSIONS, 1. Coverage E - Personal Liability** and **Coverage F - Medical Payments to Others, b.** is deleted and replaced by the following in all forms:

**b.  **Arising out of "business" pursuits of an "insured."

This exclusion does not apply to activities which are usual to non-"business" pursuits;

Under **SECTION II - EXCLUSIONS, 2. Coverage E - Personal Liability, f.** is deleted and replaced by the following in all forms:

**f.  **"Bodily injury" to you or an "insured" within the meaning of part **a.** or **b.** of "insured" as defined.

This exclusion also applies to any claim made or suit brought against you or any "insured":

**(1)** To repay; or

**(2)** Share damages with;

another person who may be obligated to pay damages because of the "bodily injury" to an "insured."

Includes copyrighted material of Insurance Services Offices, used with its permission
Copyright, Insurance Services Office, Inc., 1993

INSURED COPY

Under **SECTION II - ADDITIONAL COVERAGES, 3. Damage to Property of Others, e. (1)** is deleted and replaced by the following:

    **(1)** "Business" pursuits;

Under **SECTION II - CONDITIONS, 3. Duties After Loss,** the first paragraph and paragraph **a.** are deleted and replaced by the following:

**3. Duties After Loss.** In case of an accident or "occurrence," the "insured" or someone acting for the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed. Any written notice given by any claimant to us or any of our agents in this state, containing particulars sufficient to identify the "insured," will be deemed notice to us.

    **a.** Give written notice to us or any agents in this state as soon as is practical, which sets forth:

        **(1)** The identity of the policy and "insured";

        **(2)** Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

        **(3)** Names and addresses of any claimants and witnesses;

Under **SECTION II - CONDITIONS, 4. Duties of an Injured Person - Coverage F - Medical Payments to Others, a.** is deleted and replaced by the following:

    **a.** Give us or any of our agents in this state written proof of claim. under oath if required. as soon as is practical; and

Under **SECTIONS I AND II - CONDITIONS, 2. Concealment or Fraud** is deleted and replaced by the following:

**2. Concealment or Fraud.** We do not provide coverage for an "insured" who, whether before or after a loss, has:

    **a.** Intentionally concealed or misrepresented any material fact or circumstance; or

    **b.** Engaged in fraudulent conduct;

relating to this insurance.

Under **SECTIONS I AND II - CONDITIONS, 5. Cancellation, b.** is deleted and replaced by the following:

    **b.** We may cancel the entire policy only for the reasons stated in this condition. The cancellation notice will be mailed to you at the address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

        **(1)** When you have not paid the premium, we may cancel the entire policy at any time by mailing to you at least 15 days' notice of cancellation.

        If this cancellation reason exists, we may cancel the entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

        **(2)** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel the entire policy for any reason by letting you know at least 30 days before the date cancellation takes place.

        **(3)** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel the entire policy only for one or more of the following reasons by notifying the "insured" at least 30 days prior to the proposed cancellation date:

            **(a)** Conviction of a crime arising out of acts increasing the hazard insured against;

INSURED COPY

(b) Discovery of fraud or material misrepresentation in obtaining the policy or in the presentation of a claim thereunder;

(c) Discovery of willful or reckless acts or omissions increasing the hazard insured against;

(d) Physical changes in the property insured occurring after issuance or last annual anniversary date of the policy which result in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last voluntarily renewed; or

(e) A determination by the Superintendent of Insurance that the continuation of the policy would violate or would place us in violation of the New York Insurance Law.

If one of the reasons listed in this paragraph (3) exists, we may cancel the entire policy.

(4) If we have the right to cancel, we may, instead of canceling this policy, amend the limits of liability or reduce coverage not required by law. If we take this action, we will notify you by mail at least 20 days prior to the date of such change.

Delivery of such written notice by us to the "insured" at the mailing address shown in the Declarations or at a forwarding address will be equivalent to mailing.

Under **SECTIONS I AND II - CONDITIONS, 5. Cancellation, c.** is deleted and replaced by the following:

**c.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

However, when the premium is advanced under a premium finance agreement, we may retain a minimum earned premium on the policy of 10% of the total policy premium or $60, whichever is greater.

Under **SECTIONS I AND II - CONDITIONS, 6. Nonrenewal** is deleted and replaced by the following:

**6.  Nonrenewal.** We will not refuse to renew or condition our renewal of this policy except as allowed by the laws of the State of New York. The conditions may include, but are not limited to, amending the limits of liability or reducing coverage not required by law. If we take this action, we will notify you by mail at least 45 days, but no more than 60 days prior to the expiration date of the policy. Proof of mailing will be sufficient proof of notice.

Delivery of such written notice by us to the "insured" at the mailing address shown in the Declarations or at a forwarding address will be equivalent to mailing.

If **Farmers Personal Liability Endorsement HO 24 73** is made part of this policy, the following applies:

Under **SECTION II - EXCLUSIONS, 1. Coverage E - Personal Liability** and **Coverage F - Medical Payments to Others, b.** and **j.** are deleted and replaced by the following:

**b.** Arising out of "business" pursuits of an "insured."

This exclusion does not apply to activities which are usual to non-"business" pursuits;

**j.** Arising out of the discharge, dispersal, seepage, migration, release or escape of pollutants into or upon land, the atmosphere or any watercourse or body of water.

This exclusion does not apply if the discharge, dispersal, seepage, migration, release or escape is sudden and accidental:

INSURED COPY

Under **SECTION II - EXCLUSIONS, 2. Coverage E - Personal Liability, f.** is deleted and replaced by the following:

**f.** "Bodily injury" to you or an "insured" within the meaning of part **a.** or **b.** of "insured" as defined. This exclusion also applies to any claim made or suit brought against you or any "insured":

**(1)** To repay; or

**(2)** Share damages with;

Another person who may be obligated to pay damages because of the "bodily injury" to an "insured".

All other provisions of this policy apply.

INSURED COPY

# HOMEOWNERS COVERAGE EXTENSION ENDORSEMENT – NEW YORK

**For an additional premium, we agree to provide this additional coverage. However, with respect to this endorsement, all provisions of the Homeowners policy to which it is attached apply, except as modified herein. Please read this endorsement and your policy carefully.**

---

### SECTION I - PROPERTY COVERAGES

---

## COVERAGE C - Personal Property

Under **Special Limits of Liability**, the special limits provided under numbered categories **5.**, **6.**, and **7.** are deleted and replaced with the following:

**5.** $1000 for loss by theft, misplacing or losing of jewelry, watches, furs, precious and semi-precious stones.

**6.** $2000 for loss by theft, misplacing or losing of firearms.

**7.** $2500 for loss by theft, misplacing or losing of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

## ADDITIONAL COVERAGES

Under **8. Collapse**:

The following perils are added:

**g.** Landslide;

**h.** Water below the surface of the ground including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

The paragraph which begins with "Loss to an awning," is deleted and replaced by the following:

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items **b.**, **c.**, **d.**, **e.**, **f.**, **g.** and **h.** unless the loss is a direct result of the collapse of a building.

The following Additional Coverages are added:

**1.** **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.** We will pay up to $1000 under Additional Coverage **6.** Credit Card, Fund Transfer Card, Forgery and Counterfeit Money for a covered loss.

This coverage is additional insurance.

**2.** **Debris Removal.** We will pay your reasonable expense, up to:

**a.** $150, for the removal of trees, shrubs or plants damaged by the perils of Windstorm or Hail; and

**b.** $250, for the removal of trees, shrubs or plants damaged by the peril of weight of Ice, Snow or Sleet;

provided the trees, shrubs or plants do not damage a covered structure.

The applicable **2.a.** or **2.b.** limit is the most we will pay for any one "occurrence", regardless of the number of damaged trees, shrubs or plants.

This coverage is additional insurance.

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc., 1990

INSURED COPY

3. **Fire Department Service Charge.** We will pay up to $500 under Additional Coverage **4.** Fire Department Service Charge for a covered loss.

   This coverage is additional insurance. No deductible applies to this coverage.

4. **Lock Replacement Coverage.** We will pay for theft of keys to dwelling door and window locks. Coverage is limited to 50% of the total cost to replace door and window locks and keys, up to a limit of $500 per "occurrence".

   This coverage is additional insurance. No other deductible applies to this coverage.

5. **Loss Assessment.** We will pay up to $4000 under Section I - Additional Coverage **7.** Loss Assessment for a covered loss.

   The limit of $4000 is the most we will pay under this endorsement with respect to any one loss, regardless of the number of assessments.

   This coverage is additional insurance.

6. **Refrigerated Products.** We will pay for damage to refrigerated products kept at a "residence premises" caused by an interruption of the power supply up to a limit of $1000 per "occurrence" on that part of any loss that exceeds $50.

   This coverage is additional insurance. No other deductible applies to this coverage.

7. **Special Limits of Liability.** We insure for direct loss under Coverage C - Personal Property, Special Limits of Liability, the special limit for each lettered category below:

   a. $300 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

   b. $6500 for loss by theft, misplacing or losing of jewelry, watches, furs, precious and semi-precious stones.

   c. $5500 for loss by theft, misplacing or losing of firearms.

   d. $5000 for loss by theft, misplacing or losing of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

   Under **7.b.**, **7.c.**, and **7.d.** above, a limit of $2500 per item is the most we will pay under this endorsement and the policy with respect to a loss to any one item, regardless of the number of items involved in the loss.

   e. $2500 on property, on the "residence premises", used at any time or in any manner for any "business" purpose.

   f. $250 on property, away from the "residence premises", used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described under Special Limits of Liability numbered **10.** and **11.**

   This coverage does not increase the Coverage C limit of liability.

8. **Water Backup of Sewers and Drains.** We insure for direct physical loss caused by water which:

   a. Backs up through sewers or drains; or

   b. Enters into and overflows from within a sump pump, sump pump well or other type of system designed to remove subsurface water which is drained from the foundation area. This coverage applies even if the overflow results from the mechanical breakdown of the sump pump. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

   We will pay up to $2000 on that part of any loss that exceeds $250. No other deductible applies to this coverage.

INSURED COPY

**SECTION II - LIABILITY COVERAGES** 11
    **COVERAGE E** - Personal Liability 11
    **COVERAGE F** - Medical Payments to Others 12

**SECTION II – EXCLUSIONS** 12

**SECTION II - ADDITIONAL COVERAGES** 14
  Claims Expenses 14
  First Aid Expenses 15
  Damage to Property of Others 15
  Loss Assessment 15

**SECTION II – CONDITIONS** 15
  Limit of Liability 15
  Severability of Insurance 15
  Duties After Loss 15
  Duties of an Injured Person - Coverage F -Medical Payments to Others 16
  Payment of Claim - Coverage F – Medical Payment to Others 16
  Suit Against Us 16
  Bankruptcy of an Insured 16
  Other Insurance - Coverage E – Personal Liability 16

**SECTIONS I AND II – CONDITIONS** 16
  Policy Period 16
  Concealment or Fraud 16
  Liberalization Clause 16
  Waiver or Change of Policy Provisions 16
  Cancellation 17
  Nonrenewal 17
  Assignment 17
  Subrogation 17
  Death

This QUICK REFERENCE reflects the provisions found in an HO 00 03 HOMEOWNERS 3 - SPECIAL FORM. If your policy is other than this form, the provisions may vary slightly. This is a QUICK REFERENCE only. Please refer to the policy for the applicable coverage.

80-703 (01/96)                     INSURED COPY

# <u>NO</u> SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
# <u>LIMITED</u> SECTION I – PROPERTY COVERAGES FOR
# HOME DAY CARE BUSINESS

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business" pursuit. Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business" pursuit.

Therefore, with respect to a home day care enterprise which is considered to be a "business" pursuit, this policy:

1. Does not provide Section II – Liability Coverages because "business" pursuits of an "insured" are excluded under exclusion **1.b.** of Section II – Exclusions;

2. Does not provide Section I – Coverage B coverage where other structures are used in whole or in part for "business";

3. Limits coverage for property used on the "residence premises" for the home day care enterprise to $2,500, because Coverage C – Special Limits of Liability – item **8.** imposes that limit on "business" property on the "residence premises." (Item **8.** corresponds to item **5.** in Form **HO 00 08.**);

4. Limits coverage for property used away from the "residence premises" for the home day care enterprise to $250, because Coverage C – Special Limits of Liability – item **9.** imposes that limit on "business" property away from the "residence premises." Special Limit of Liability item **9.** does not apply to adaptable electronic apparatus as described in Special Limit of Liability items **10.** and **11.** (Items **9., 10.** and **11.** correspond to items **6., 7.** and **8.** respectively in Form **HO 00 08.**)

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

Copyright, Insurance Services Office, Inc., 1990

HO 23 43 04 91

INSURED COPY

# HOMEOWNERS' NON-SMOKERS ENDORSEMENT – HO-110

Your Homeowner premium has been reduced because you have agreed there are no cigarette, pipe or cigar smokers residing at the insured premises.

Should a resident at the insured premises begin to smoke or should a person who smokes become a resident at the insured premises, you agree to report this change to us within 30 days of that date.

INSURED COPY

# OPERATION IDENTIFICATION WARRANTY ENDORSEMENT

**Insured's Action**

Within thirty (30) days after the effective date of this endorsement, I, the Insured, agree to:

1. Mark with Operation ID marker or engraver at least TEN (10) valued items of personal property (e.g., bicycles, outboard motors, television sets, radios, stereos, tape recorders, power yard equipment, etc.)

2. Display the "Operation ID" decals on all outside entrances of my home and garage.

**Company Action**

Based on the "Insured's Action," the company is allowing a five percent (5%) decrease in the premium.

**In the Event of a Theft Loss**

If I have complied with "Insured's Action," the all-perils deductible shown on the Declarations page applies.

If I have not complied with the "Insured's Action," an additional deductible of $150 will apply as shown in the examples below:

| If your all-perils Deductible is | . . . And you comply with "Insured's Action" your Theft deductible is | . . . Or you do not comply with "Insured's Action" Your Theft deductible is |
|---|---|---|
| $100 | $100 | $250 |
| $250 | $250 | $400 |
| $500 | $500 | $650 |

Signature(s) of Insured(s): _____

_____

_____

Policy No. (if assigned): _____

Agent: _____

HO-103 (3/83)

INSURED COPY

# PREMISES ALARM OR FIRE PROTECTION SYSTEM

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the "residence premises." You agree to maintain this system in working order and to let us know promptly of any change made to the system or if it is removed.

Copyright, Insurance Services Office, Inc., 1990

HO 04 16 (04/91)

# HOMEOWNERS 6
# UNIT-OWNERS FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Insured" means you and residents of your household who are:

   a. Your relatives; or

   b. Other persons under the age of 21 and in the care of any person named above.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **3.a.** or **3.b.** above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   d. With respect to any vehicle to which this policy applies:

      (1) Persons while engaged in your employ or that of any person included in **3.a.** or **3.b.** above; or

      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence and:

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in **4.a.** and **4.b.** above;

   d. Any part of a premises:

      (1) Not owned by an "insured"; and

      (2) Where an "insured" is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an "insured";

   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

   g. Individual or family cemetery plots or burial vaults of an "insured"; or

   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage."

6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "Residence employee" means:

   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured."

8. "Residence premises" means the unit where you reside shown as the "residence premises" in the Declarations.

Copyright, Insurance Services Office, Inc., 1990

INSURED COPY

## COVERAGE A – Dwelling

We cover:

1. The alterations, appliances, fixtures and improvements which are part of the building contained within the "residence premises";
2. Items of real property which pertain exclusively to the "residence premises";
3. Property which is your insurance responsibility under a corporation or association of property owners agreement; or
4. Structures owned solely by you, other than the "residence premises," at the location of the "residence premises."

This coverage does not apply to land, including land on which the "residence premises," real property or structures are located.

We do not cover:

1. Structures used in whole or in part for "business" purposes; or
2. Structures rented or held for rental to any person not a tenant of the "residence premises," unless used solely as a private garage.

## COVERAGE C – Personal Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";
2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.
2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.
3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.
4. $1000 on trailers not used with watercraft.
5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.
6. $2000 for loss by theft of firearms.
7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.
8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.
9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits **10.** and **11.** below.
10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:
    a. Accessories or antennas; or
    b. Tapes, wires, records, discs or other media;
    for use with any electronic apparatus.
11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:
    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;
    b. Is away from the "residence premises"; and
    c. Is used at any time or in any manner for any "business" purpose.
    Electronic apparatus includes:

Copyright, Insurance Services Office, Inc., 1990

INSURED COPY

   **a.** Accessories or antennas; or

   **b.** Tapes, wires, records, discs or other media;

for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;
2. Animals, birds or fish;
3. Motor vehicles or all other motorized land conveyances. This includes:

   **a.** Their equipment and accessories; or

   **b.** Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

      **(1)** Accessories or antennas; or

      **(2)** Tapes, wires, records, discs or other media;

      for use with any electronic apparatus.

      The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   **a.** Used to service an "insured's" residence; or

   **b.** Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;
5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";
6. Property in an apartment regularly rented or held for rental to others by an "insured";
7. Property rented or held for rental to others off the "residence premises";
8. "Business" data, including such data stored in:

   **a.** Books of account, drawings or other paper records; or

   **b.** Electronic data processing tapes, wires, records, discs or other software media.

   However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages **6.**

**COVERAGE D – Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss by a Peril Insured Against under this policy to covered property or the building containing the property, makes the "residence premises" not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.

   **a.** **Additional Living Expense**, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

   **b.** **Fair Rental Value**, meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

   Payment under **a.** or **b.** will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

   **Fair Rental Value**, meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under **1.** and **2.** above for no more than two weeks.

The periods of time under **1.**, **2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**ADDITIONAL COVERAGES**

   1. **Debris Removal.** We will pay your reasonable expense for the removal of:

Copyright, Insurance Services Office, Inc., 1990

INSURED COPY

a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

a. Your tree(s) felled by the peril of Windstorm or Hail;

b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

This coverage:

a. Does not increase the limit of liability that applies to the covered property;

b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I – CONDITION 2.d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against:  Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

We will pay up to 10% of the limit of liability that applies to Coverage C for all trees, shrubs or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $500 for:

a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

a. By a resident of your household;

b. By a person who has been entrusted with either type of card; or

c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

Copyright, Insurance Services Office, Inc., 1990

HO 00 06 (04/91)

INSURED COPY

**b.** If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

**c.** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

**7. Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A – DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition **1.** Policy Period, under SECTIONS I and II CONDITIONS, does not apply to this coverage.

**8. Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

**a.** Perils Insured Against in COVERAGE C – PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

**b.** Hidden decay;

**c.** Hidden insect or vermin damage;

**d.** Weight of contents, equipment, animals or people;

**e.** Weight of rain which collects on a roof; or

**f.** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items **b., c., d., e.,** and **f.** unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

**9. Glass or Safety Glazing Material**

We cover:

**a.** The breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage A; and

**b.** Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

## SECTION I – PERILS INSURED AGAINST

We insure for direct physical loss to the property described in Coverages A and C caused by a peril listed below unless the loss is excluded in SECTION I – EXCLUSIONS.

**1. Fire or lightning.**

**2. Windstorm or hail.**

This peril does not include loss to the inside of a building or the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

**3. Explosion.**

**4. Riot or civil commotion.**

**5. Aircraft,** including self-propelled missiles and spacecraft.

Copyright, Insurance Services Office, Inc., 1990

HO 00 06 (04/91)

**6. Vehicles.**

This peril does not include loss to a fence, driveway or walk caused by a vehicle owned or operated by a resident of the "residence premises."

**7. Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism or malicious mischief.**

This peril does not include loss to property on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

**9. Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

**a.** Committed by an "insured";

**b.** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

**c.** From that part of a "residence premises" rented by an "insured" to other than an "insured."

This peril does not include loss caused by theft that occurs off the "residence premises" of:

**a.** Property while at any other residence owned by, rented to, or occupied by an "insured," except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

**b.** Watercraft, and their furnishings, equipment and outboard engines or motors; or

**c.** Trailers and campers.

**10. Falling objects.**

This peril does not include loss to the inside of a building or property contained in the building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight of ice, snow or sleet** which causes damage to a building or property contained in the building.

This peril does not include loss to an awning, fence, patio, pavement, swimming pool, foundation, retaining wall, bulkhead, pier, wharf, or dock.

**12. Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. We also pay for tearing out and replacing any part of the building which is covered under Coverage A and on the "residence premises," if necessary to repair the system or appliance from which the water or steam escaped.

This peril does not include loss:

**a.** On the "residence premises," if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**b.** To the system or appliance from which the water or steam escaped;

**c.** Caused by or resulting from freezing except as provided in the peril of freezing below; or

**d.** On the "residence premises" caused by accidental discharge or overflow which occurs away from the building where the "residence premises" is located.

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

**13. Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss caused by or resulting from freezing except as provided in the peril of freezing below.

**14. Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while unoccupied, unless you have used reasonable care to:

**a.** Maintain heat in the building; or

**b.** Shut off the water supply and drain the system and appliances of water.

**15. Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

**16. Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

Copyright, Insurance Services Office, Inc., 1990

INSURED COPY

## SECTION I – EXCLUSIONS

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

2. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

   a. Fire;

   b. Explosion; or

   c. Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

   ensues and then we will pay only for the ensuing loss.

   This exclusion does not apply to loss by theft.

3. **Water Damage,** meaning:

   a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

   b. Water which backs up through sewers or drains or which overflows from a sump; or

   c. Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

   Direct loss by fire, explosion or theft resulting from water damage is covered.

4. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

5. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War,** including the following and any consequence of any of the following:

   a. Undeclared war, civil war, insurrection, rebellion or revolution;

   b. Warlike act by a military force or military personnel; or

   c. Destruction, seizure or use for a military purpose.

   Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I – CONDITIONS.

8. **Intentional Loss,** meaning any loss arising out of any act committed:

   a. By or at the direction of an "insured"; and

   b. With the intent to cause a loss.

## SECTION I – CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

   b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

   a. Give prompt notice to us or our agent;

   b. Notify the police in case of loss by theft;

   c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

   d. Protect the property from further damage. If repairs to the property are required, you must:

      (1) Make reasonable and necessary repairs to protect the property; and

      (2) Keep an accurate record of repair expenses;

   e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

   f. As often as we reasonably require:

      (1) Show the damaged property;

Copyright, Insurance Services Office, Inc., 1990

INSURED COPY

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in **2.e.** above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

a. Personal property at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Coverage A – Dwelling:

(1) If the damage is repaired or replaced within a reasonable time, at the actual cost to repair or replace;

(2) If the damage is not repaired or replaced, at actual cash value but not more than the amount required to repair or replace.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

a. Repair or replace any part to restore the pair or set to its value before the loss; or

b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

a. Pay its own appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, except insurance in the name of a corporation or association of property owners, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

If, at the time of loss, there is other insurance in the name of a corporation or association of property owners covering the same property covered by this policy, this insurance will be excess over the amount recoverable under such other insurance.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

a. Reach an agreement with you;

b. There is an entry of a final judgment; or

c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**

The word "mortgagee" includes trustee.

Copyright, Insurance Services Office, Inc., 1990

HO 00 06 (04/91)

INSURED COPY

If a mortgagee is named in this policy, any loss payable under Coverage A – Dwelling will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II – LIABILITY COVERAGES

### COVERAGE E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

### COVERAGE F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":

a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

b. Is caused by the activities of an "insured";

c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

d. Is caused by an animal owned by or in the care of an "insured."

Copyright, Insurance Services Office, Inc., 1990

HO 00 06 (04/91)

## SECTION II – EXCLUSIONS

1. **Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply to "bodily injury" or "property damage":

   a. Which is expected or intended by the "insured";

   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

   c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

      (1) On an occasional basis if used only as a residence;

      (2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

      (3) In part, as an office, school, studio or private garage;

   d. Arising out of the rendering of or failure to render professional services;

   e. Arising out of a premises:

      (1) Owned by an "insured";

      (2) Rented to an "insured"; or

      (3) Rented to others by an "insured";

      that is not an "insured location";

   f. Arising out of:

      (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

      (2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

      (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph **(1)** or **(2)** above.

      This exclusion does not apply to:

      (1) A trailer not towed by or carried on a motorized land conveyance;

      (2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

         (a) Not owned by an "insured"; or

         (b) Owned by an "insured" and on an "insured location";

      (3) A motorized golf cart when used to play golf on a golf course;

      (4) A vehicle or conveyance not subject to motor vehicle registration which is:

         (a) Used to service an "insured's" residence;

         (b) Designed for assisting the handicapped; or

         (c) In dead storage on an "insured location";

   g. Arising out of:

      (1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

      (2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

      (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

      Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

      (1) That are not sailing vessels and are powered by:

         (a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

         (b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

         (c) One or more outboard engines or motors with 25 total horsepower or less;

         (d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

Copyright, Insurance Services Office, Inc., 1990

   **(e)** Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:
- **(i)** You acquire them prior to the policy period; and
  - **(a)** You declare them at policy inception; or
  - **(b)** Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.
- **(ii)** You acquire them during the policy period.

   This coverage applies for the policy period.

**(2)** That are sailing vessels, with or without auxiliary power:
- **(a)** Less than 26 feet in overall length;
- **(b)** 26 feet or more in overall length, not owned by or rented to an "insured."

**(3)** That are stored;

**h.** Arising out of:
- **(1)** The ownership, maintenance, use, loading or unloading of an aircraft;
- **(2)** The entrustment by an "insured" of an aircraft to any person; or
- **(3)** Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

**i.** Caused directly or indirectly by war, including the following and any consequence of any of the following:
- **(1)** Undeclared war, civil war, insurrection, rebellion or revolution;
- **(2)** Warlike act by a military force or military personnel; or
- **(3)** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**j.** Which arises out of the transmission of a communicable disease by an "insured";

**k.** Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**l.** Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **e., f., g.,** and **h.** do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured."

**2. Coverage E – Personal Liability,** does not apply to:

**a.** Liability:
- **(1)** For any loss assessment charged against you as a member of an association, corporation or community of property owners;
- **(2)** Under any contract or agreement. However, this exclusion does not apply to written contracts:
  - **(a)** That directly relate to the ownership, maintenance or use of an "insured location"; or
  - **(b)** Where the liability of others is assumed by the "insured" prior to an "occurrence";
  
  unless excluded in **(1)** above or elsewhere in this policy;

**b.** "Property damage" to property owned by the "insured";

**c.** "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**d.** "Bodily injury" to any person eligible to receive any benefits:
- **(1)** Voluntarily provided; or
- **(2)** Required to be provided;

by the "insured" under any:
- **(1)** Workers' compensation law;
- **(2)** Non-occupational disability law; or
- **(3)** Occupational disease law;

**e.** "Bodily injury" or "property damage" for which an "insured" under this policy:
- **(1)** Is also an insured under a nuclear energy liability policy; or
- **(2)** Would be an insured under that policy but for the exhaustion of its limit of liability

Copyright, Insurance Services Office, Inc., 1990

HO 00 06 (04/91)

INSURED COPY

A nuclear energy liability policy is one issued by:

**(1)** American Nuclear Insurers;

**(2)** Mutual Atomic Energy Liability Underwriters;

**(3)** Nuclear Insurance Association of Canada;

or any of their successors; or

**f.** "Bodily injury" to you or an "insured" within the meaning of part **a.** or **b.** of "insured" as defined.

**3. Coverage F – Medical Payments to Others,** does not apply to "bodily injury":

**a.** To a "residence employee" if the "bodily injury":

**(1)** Occurs off the "insured location"; and

**(2)** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**b.** To any person eligible to receive benefits:

**(1)** Voluntarily provided; or

**(2)** Required to be provided;

under any:

**(1)** Workers' compensation law;

**(2)** Non-occupational disability law; or

**(3)** Occupational disease law;

**c.** From any:

**(1)** Nuclear reaction;

**(2)** Nuclear radiation; or

**(3)** Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

**(4)** Any consequence of any of these; or

**d.** To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

**1. Claim Expenses.** We pay:

**a.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**b.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

**c.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and

**d.** Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**2. First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

**3. Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

We will not pay for "property damage":

**a.** To the extent of any amount recoverable under Section I of this policy;

**b.** Caused intentionally by an "insured" who is 13 years of age or older;

**c.** To property owned by an "insured";

**d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

**e.** Arising out of:

**(1)** A "business" engaged in by an "insured";

**(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or

Copyright, Insurance Services Office, Inc., 1990

INSURED COPY

(3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

4. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or

b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

(1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

(2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II – Coverage E – Personal Liability Exclusion **2.a.(1)**;

2. Condition **1.** Policy Period, under SECTIONS I AND II CONDITIONS.

## SECTION II – CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

a. Give written notice to us or our agent as soon as is practical, which sets forth:

(1) The identity of the policy and "insured";

(2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

(3) Names and addresses of any claimants and witnesses;

b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

c. At our request, help us:

(1) To make settlement;

(2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

(3) With the conduct of suits and attend hearings and trials; and

(4) To secure and give evidence and obtain the attendance of witnesses;

d. Under the coverage – Damage to Property of Others – submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

4. **Duties of an Injured Person – Coverage F – Medical Payments to Others.**

The injured person or someone acting for the injured person will:

a. Give us written proof of claim, under oath if required, as soon as is practical; and

Copyright, Insurance Services Office, Inc., 1990

INSURED COPY

   b. Authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim – Coverage F – Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

   No action can be brought against us unless there has been compliance with the policy provisions.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance – Coverage E – Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTIONS I AND II – CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements;

   relating to this insurance.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Waiver or Change of Policy Provisions.**

   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing will be sufficient proof of notice.

     (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

     (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

     (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

       (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

       (b) If the risk has changed substantially since the policy was issued.

       This can be done by letting you know at least 30 days before the date cancellation takes effect.

     (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

Copyright, Insurance Services Office, Inc., 1990

HO 00 06 (04/91)

INSURED COPY

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

   a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

   b. "Insured" includes:

      (1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

      (2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, Insurance Services Office, Inc., 1990

HO 00 06 (04/91)

INSURED COPY

# EXHIBIT "C"

# Affidavit of Process Server

STATE OF NEW YORK SUPREME COURT OF MONROE
(NAME OF COURT)

Kara Penna and Ronald M. Penna vs Peerless Insurance Company          3224/06
PLAINTIFF/PETITIONER          DEFENDANT/RESPONDENT          CASE NUMBER

I, Charles Villar, being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.

Service: I served Peerless Insurance Company
NAME OF PERSON / ENTITY BEING SERVED

with (list documents) Summons and Complaint

by leaving with Tonya Blackman          Legal Assistant          At
NAME          RELATIONSHIP

☐ Residence _____
ADDRESS          CITY / STATE

☒ Business     62 Maple St.          Keene, New Hampshire
ADDRESS          CITY / STATE

On March 30th 2006          AT 3:00 PM
DATE          TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on_____
DATE

from_____
CITY          STATE          ZIP

Manner of Service:
☐ Personal: By personally delivering copies to the person being served.
☐ Substituted at Residence: By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of _____ and explaining the general nature of the papers.
☒ Substituted at Business: By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☐ Posting: By posting copies in a conspicuous manner to the front door of the person/entity being served.

Non-Service: After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address   ☐ Moved, Left no Forwarding   ☐ Service Cancelled by Litigant  ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist  ☐ Other_____

Service Attempts: Service was attempted on: (1)_____   (2)_____
DATE          TIME          DATE          TIME

(3)_____   (4)_____   (5)_____
DATE          TIME          DATE          TIME          DATE          TIME

Description: Age 30  Sex F  Race W  Height 5'9"  Weight 140  Hair Brown  Beard No  Glasses No

_____
SIGNATURE OF PROCESS SERVER

SUBSCRIBED AND SWORN to before me this 31st day of March, 2006.

_____
SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the state of Vermont

# Affidavit of Process Server

STATE OF NEW YORK SUPREME COURT OF MONROE
_____
(NAME OF COURT)

Kara Penna and Ronald M. Penna vs  Peerless Insurance Company          3224/06
PLAINTIFF/PETITIONER          DEFENDANT/RESPONDENT          CASE NUMBER

I, _Charles Villar_____, being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said services.

Service: I served _Peerless Insurance Company c/o Joseph P. Tracey_____
                    NAME OF PERSON / ENTITY BEING SERVED

with (list documents) _Summons and Complaint_____ At

by leaving with _____    _____
                    NAME                            RELATIONSHIP

☐ Residence _35 Dickinson Road Keene, New Hampshire_    _____
                    ADDRESS                              CITY / STATE

☐ Business _____    _____
                    ADDRESS                         CITY / STATE

On _March 30th 2006_     AT _2:25_ PM
      DATE                     TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on_____
                                                                                DATE

from_____    _____    _____
        CITY              STATE           ZIP

**Manner of Service:**
☐ **Personal:** By personally delivering copies to the person being served.
☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of _____ and explaining the general nature of the papers.
☑ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address   ☐ Moved, Left no Forwarding   ☐ Service Cancelled by Litigant   ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist   ☐ Other_____

**Service Attempts:** Service was attempted on: (1) _March 30th 2006  2:25 PM_____ (2)_____
                                                    DATE      TIME              DATE      TIME

(3)_____ (4)_____ (5)_____
      DATE      TIME          DATE      TIME          DATE      TIME

Description:. Age_____ Sex_____ Race_____ Height_____ Weight_____ Hair_____ Beard_____ Glasses_____

_____
SIGNATURE OF PROCESS SERVER

SUBSCRIBED AND SWORN to before me this _7th_ day of _April_, 2006.

_____
SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the state of _Vermont_

FORM 2   NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS