UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KARA PENNA and RONALD PENNA, M.D.,

      Plaintiffs,

    v.

PEERLESS INSURANCE COMPANY,

      Defendant.

_____

DECISION & ORDER

06-CV-6201P

## PRELIMINARY STATEMENT

    On March 17, 2006, plaintiffs Kara Penna and Ronald Penna, M.D., filed suit in

New York State Supreme Court against Peerless Insurance Company ("Peerless"). (Docket # 15,

Ex. A). Invoking diversity jurisdiction, Peerless removed the matter to this Court pursuant to 28

U.S.C. § 1441. (Docket # 1). Pursuant to 28 U.S.C. § 636(c), the parties have consented to have

a United States magistrate judge conduct all further proceedings in this case, including the entry

of final judgment. (Docket # 18). Currently before this Court is Peerless's motion for summary

judgment. (Docket # 14). For the reasons discussed below, Peerless's motion is granted.

## FACTUAL BACKGROUND

    The following recitation of the factual background to this case is derived from the

parties' undisputed statements of material facts submitted pursuant to Rule 56.1 of the Local

Rules of Civil Procedure for the Western District of New York.[1]

At all times relevant to this action, plaintiff Ronald Penna owned a condominium located at 58 Ellington Circle, Rochester, New York.  (Docket # 15-1 at ¶ 3; # 22-6 at ¶ 1).  A homeowner's insurance policy had been issued for that property by Excelsior Insurance Company, a member underwriting company of Peerless.[2]  (Docket # 15-1 at ¶ 4; # 22-6 at ¶ 1). The policy was issued to "Kara Penna, LT c/o Ronald Penna" and contained a provision entitled "Suits Against Us," which provided, "No action can be brought unless the policy provisions have been complied with and the action is started within two years after the date of loss."  (Docket # 15-1 at ¶¶ 4-5, Ex. B).

On July 9, 2003, a plumbing break occurred at the condominium, resulting in significant water damage to the basement and first floor.  The flood also caused the proliferation of mold.  (Docket # 15 at ¶ 3; # 22-6 at ¶ 2).  That same day plaintiffs contacted their insurance agent and informed him of the flood.  (Docket # 22-6 at ¶ 3).

A Peerless claims representative spoke with plaintiffs on July 14, 2003, took a recorded statement and advised plaintiffs that they would be contacted by another representative, Stephen Scott of North Coast Claims, to schedule an inspection of the property.  Plaintiffs were further advised that no work could be performed on the property unless approved by Scott. (Docket # 22-6 at ¶ 4).  During the ensuing seven months, plaintiffs communicated frequently

---

[1]  Plaintiffs have not disputed the defendant's statement, but have submitted a "counter-statement" containing additional factual assertions.  (*See* Docket # 22-6 at ¶ 1).  Defendant has not contested the assertions in plaintiffs' counter-statement, although defendant has submitted a reply affidavit seeking to amplify some of the plaintiffs' assertions.  (*See* Docket # 23 and Exhibit ("Ex.") A thereto).

[2]  Peerless contends that the lawsuit incorrectly names it as defendant, when the proper party is Excelsior Insurance Company.  (Docket # 14-6 at 1).  Peerless does not seek judgment on this basis, however, and the issue of whether Peerless is a properly-named defendant is not addressed in this opinion.

with Scott and other Peerless representatives to arrange structural and environmental inspections of the property in order to determine the scope of necessary repairs and remediation. (Docket # 22-6 at ¶¶ 5-18).

Also during that period, Peerless issued two checks to plaintiffs in connection with the claim: the first in the amount of $1,489.89 as reimbursement for, among other things, one of the property inspections; the second in the amount of $4,230.73 as reimbursement for the initial cleanup. (Docket # 22-6 at ¶ 20). Peerless neither paid, nor denied the remainder of plaintiffs' claim, consisting of approximately $67,000 in expenses incurred for mold remediation and property rehabilitation and approximately $18,000 in lost rental income. (*Id.*). In the Spring of 2004, plaintiffs retained counsel to assist them in obtaining reimbursement for the flood damage from Peerless, as well as from the manufacturer, supplier and installer of the plumbing part that failed. (Docket # 22-6 at ¶ 19).

After they retained counsel, Peerless requested from plaintiffs proofs of loss, photographs, additional documentation regarding the repairs and remediation work and their expenses, and an examination under oath ("EUO") of Ronald Penna. (Docket # 22-6 at ¶¶ 22-27). Certain information was provided by Penna,[3] and his EUO was scheduled for July 7, 2005, two days before the expiration of the two-year contractual limitations period. At plaintiffs' request, the EUO was rescheduled and conducted on July 14, 2005. (Docket # 22-6 at ¶¶ 29-30; # 23 at ¶ 6). During the EUO, counsel for Peerless requested that plaintiffs produce various

---

[3] The parties apparently dispute whether Penna fully complied with the requests for documentation. That dispute is not material to resolution of the pending motion.

additional documents – a request that plaintiffs' counsel asked to be made in writing.  No written request was forthcoming, nor was the examination transcript forwarded by Peerless to plaintiffs.

Plaintiffs commenced suit in New York State Supreme Court on March 17, 2006, seeking a declaratory judgment that defendant is obligated to cover plaintiffs' losses from the plumbing break.  (Docket # 15-1 at ¶ 2, Ex. A; # 22-6 at ¶¶ 32-33).

## **DISCUSSION**

Peerless moves for summary judgment on the grounds that plaintiffs failed to commence this action within the requisite two-year limitations period provided for in the insurance policy.  (Docket # 14-6).  Plaintiffs do not dispute that their claim was filed more than two years after the date of loss.  Rather, they argue that triable issues of fact exist as to whether Peerless waived or is estopped from asserting the limitations defense as a result of its actions during the pre-suit investigation of plaintiffs' claim.  Alternatively, plaintiffs contend that the limitation provision is ambiguous and unenforceable.  (Docket # 22-7).

**A.  Standard for Summary Judgment:**  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In reaching this determination, the court must assess whether there exist any disputed material facts and, in so doing, must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991).

4

A fact is "material" only if it has some effect on the outcome of the suit.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the nonmoving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d at 982 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The party seeking to avoid summary judgment "must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . . , that there are specific factual issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Driscoll v. Townsend*, 60 F. Supp. 2d 78, 80 (W.D.N.Y. 1999).

As the Second Circuit has explained:

> [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution . . . . It must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Serv., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

B.  **Failure to File Suit within the Two-Year Limitations Period:**  New York

law generally provides six years within which to file suit based upon an alleged breach of

contract.[4]  N.Y. C.P.L.R. § 213(2) (McKinney 2003).  Parties are permitted, however, to agree to

shorter limitations periods, which are enforceable, provided they are reasonable and in writing.

*John J. Kassner & Co., Inc. v. City of New York*, 46 N.Y.2d 544, 550-51 (1979); *Carat Diamond*

*Corp. v. Underwriters at Lloyd's, London*, 506 N.Y.S.2d 708, 709-10 (N.Y. App. Div. 1986).

Indeed, insurance policies providing for a limitations period as short as twelve months have been

found enforceable.  *See*, *e.g.*, *Blitman Constr. Corp. v. Insurance Co. of N. Am.*, 66 N.Y.2d 820,

823 (1985); *Carat Diamond Corp. v. Underwriters at Lloyd's, London*, 506 N.Y.S.2d at 709-10.

Notwithstanding any agreed-upon limitations period, a motion for summary judgment based

upon a plaintiff's failure to comply with that period will be denied if triable issues of fact exist to

question whether the insurer made representations or engaged in conduct to mislead the plaintiff

into believing that the limitations provision would not be invoked.  *See*, *e.g.*, *Blitman Constr.*

*Corp. v. Insurance Co. of N. Am.*, 66 N.Y.2d at 823; *Carat Diamond Corp.*, 506 N.Y.S.2d at 710;

*Ilic v. Peerless Ins. Co.*, 670 N.Y.S.2d 1006, 1007 (N.Y. Sup. Ct. 1998).

Once an insurer "meets the initial burden of establishing that a limitations period

found in the insurance policy expired prior to the commencement of the action, the burden shifts

to the plaintiffs 'to aver evidentiary facts establishing that the case at hand falls within an

exception to the limitations period.'"  *Enterprise Eng'g, Inc. v. Hartford Fire Ins. Co.*, 2004 WL

---

[4]  In cases such as this arising under the Court's diversity jurisdiction, the court must apply federal
procedural law and the substantive law of the state in which it sits.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).
Thus, the substantive law of the state of New York applies in this case.  *See Schiavone Constr. Co. v. City of New
York*, 99 F.3d 546 (2d Cir. 1996).

6

2997857, *2 (S.D.N.Y. 2004) (quoting *Minichello v. Nothern Assurance Co. of Am.*, 758

N.Y.S.2d 669, 670 (N.Y. App. Div. 2003)).  According to plaintiffs' insurance policy, any

lawsuit based upon a claim to the policy was to be filed within two years of the date of loss.

(Docket # 15 at ¶¶ 4-5, Ex. B).  No dispute exists that the damage to plaintiffs' condominium

occurred on July 9, 2003.  (Docket # 15 at ¶ 3; # 22-6 at ¶ 2).  Thus, to comply with the policy,

plaintiffs were required to file suit by July 9, 2005.

       Plaintiffs did not commence this action until March 17, 2006, more than eight

months after the expiration of the applicable limitations period.  (Docket # 1, Ex. A; # 22-6 at

¶¶ 32-33).  Thus, Peerless has satisfied its initial burden of demonstrating a violation of the

limitations period, and the Court must proceed to consider whether a reasonable juror could find

that Peerless is foreclosed from asserting the limitations defense on the basis of its actions or

statements during the pre-suit period.

       **C.  <u>Plaintiffs Have Not Demonstrated Waiver or Estoppel</u>:**  "In order to

establish a waiver of a 'time for suit clause,' the plaintiff must present evidence from which the

defendant's intent to relinquish the protection of the contractual limitations period can be

reasonably inferred."  *Id.* at *3 (quoting *Satyam Imports, Inc. v. Underwriters at Lloyd's Via*

*Marsh, S.A.*, 2003 WL 22349668, * 2 (S.D.N.Y. 2003) and citing *Gilbert Frank Corp. v. Federal*

*Ins. Co.*, 70 N.Y.2d 966, 968 (N.Y. 1988)).  A waiver "should not be lightly presumed,"

however.  *Id.* (quoting *Gilbert Frank Corp. v. Federal Ins. Co.*, 70 N.Y.2d at  968)).

       To invoke estoppel, a plaintiff must demonstrate that he was misled or lulled by

the defendant into failing to file a claim in a timely manner.  *Id.* (citations omitted).  The doctrine

will not apply if either (1) the conduct ceased during the limitations period and the plaintiff did

not file suit within the period despite having had sufficient time to do so, or (2) the conduct

ceased after the limitations period expired and the plaintiff did not file suit within a reasonable

time thereafter. *Id.* (citing *Simcuski v. Saeli*, 44 N.Y.2d 442, 449-50 (1978), and *Overall v.*

*Estate of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995)).

Plaintiffs assert that Peerless exhibited an intent to resolve their claim by making

two partial payments, requesting documentation relating to the claim and estimates of the

damage, and conducting environmental inspections of the property.  (Docket # 22-7).  Plaintiffs

further argue that the fact that Peerless conducted an EUO of Ronald Penna following the

expiration of the limitations period, at which it requested additional documentation, constituted

an "'unequivocal action inconsistent with a forfeiture of the policy' from which a jury could find

an implicit waiver of the limitations period."  (Docket # 22-7 at 7 (quoting *Graziane v. National*

*Sur. Corp.*, 477 N.Y.S.2d 813, 814 (N.Y. App. Div. 1984)).

Those same actions estop Peerless from asserting that the lawsuit is time-barred

by the terms of the insurance agreement, plaintiffs further maintain.  In plaintiffs' view,

Peerless's conduct "'lulled the plaintiff[s] into believing that [their] claim would be ultimately

settled' and [that] the 'limitations provision for commencement of suit would not be asserted by

the defendant.'" (Docket # 22-7 at 8 (quoting *Dresserville Farms, Inc. v. Firemen's Ins. Co.*, 388

N.Y.S.2d 788, 789 (N.Y. App. Div.)).

In short, plaintiffs contend that triable issues of fact exist as to whether Peerless is

foreclosed equitably (under the doctrine of either waiver or estoppel) from asserting the two-year

contractual limitations period as a bar to this lawsuit.  To the contrary, I conclude as a matter of

law on the undisputed facts before me that Peerless neither waived, nor is estopped from

asserting, the limitations defense.

It is well-settled that neither estoppel nor waiver of an applicable limitations

period may be inferred solely from the fact that the carrier investigated the policy claim or the

parties negotiated an attempted resolution, even if those actions occurred after the limitations

period expired.  In reviewing this established caselaw, another federal court explained:

> In contrast to when an insured is "promised repeatedly by agents
> for the insurer that the loss would be adjusted without litigation,"
> steps taken by an insurer to investigate a claim do not constitute
> waiver or estoppel.  *Satyam Imports*, 2003 WL 22349668, at * 3
> (citation omitted).  Communications or settlement negotiations,
> including offers to settle for a specified sum, do not constitute
> waiver or estoppel of contractual time limitations on bringing suit
> whether such discussions occur before or after the expiration of the
> limitations period.  *Gilbert Frank*, 70 N.Y.2d at 968.  Partial
> payments of claims after the expiration of a limitations period do
> not amount to waiver or estoppel either.  *New Medico Assoc., Inc.
> v. Empire Blue Cross & Blue Shield*, 701 N.Y.S.2d 142, 145 (3rd
> Dep't 1999); *see also Helios Trading Corp. v. Great American Ins.
> Co.*, No. 92 Civ. 1071 (PNL), 1993 WL 502434, at *3 (S.D.N.Y.
> Mar. 8, 1993).

*Enterprise Eng'g, Inc. v. Hartford Fire Ins. Co.*, 2004 WL 2997857 at *3.  *See Gilbert Frank

Corp.*, 70 N.Y.2d at 968 (collecting cases).

In this case, Peerless does not dispute that it made partial payments to plaintiffs in

connection with the insurance claim, requested information, documents and photographs from

plaintiffs regarding the claimed damage, and conducted an examination of Ronald Penna one

week after the two-year limitations period had expired.  As to the latter, Peerless notes that the

EUO was originally scheduled to occur within the limitations period, but was rescheduled at

plaintiffs' request.  Even these undisputed facts, however, fail to form a sufficient basis from

which a reasonable juror could infer that Peerless intended to "relinquish [its] protection of the

contractual limitations period." *Enterprise Eng'g,* Inc., 2004 WL 2997857 at *3. *See also*

*Gilbert Frank Corp.*, 70 N.Y.2d at 968 ("since the conduct complained of occurred subsequent to

expiration of the limitations period, plaintiff could not have relied on that conduct in failing to

timely commence its action").

   Plaintiffs have not alleged that Peerless explicitly represented that it would not

invoke the policy's two-year limitations clause.  To the contrary, during the pre-suit investigation

period, Peerless repeatedly represented its intention to reserve all of its rights and defenses.

Specifically, three separate letters sent by counsel for Peerless to counsel for plaintiffs during the

period from September 2004 to March 2005, included a reservation of rights clause.  (Docket

# 23-2, Ex. A).  In the first of the three, which requested plaintiffs to submit sworn proofs of loss,

the clause stated:

> By requesting your sworn proofs of loss, Excelsior Insurance
> Company does not waive any of its rights or defenses under the
> subject insurance policy.  Excelsior Insurance Company
> specifically reserves those rights and defenses at this time.
> *Excelsior Insurance Company will investigate this claim[;]*
> *however, this act or any other act on the part of this company will*
> *not be construed as either a waiver of the policy provisions or its*
> *rights thereunder.*  Excelsior Insurance Company specifically
> reserves its right to rely upon each and every term and provision
> thereof and to disclaim liability and/or deny coverage for any
> reasons which may exist or which may hereafter appear and come
> to this company's attention.

(*Id.* (emphasis added)).  The second of the three acknowledged receipt of the proofs of loss, but

noted, "At this time, Excelsior Insurance Company neither accepts nor rejects those proofs of

loss and the amounts claimed." (*Id.*).  It requested that the plaintiffs produce additional

documentation, again noting:

> By requesting these documents, Excelsior Insurance Company does
> not waive any of its actual or potential rights or defenses under the
> subject insurance policy.  Excelsior specifically reserves those
> rights and defenses at this time. *Excelsior will continue to
> investigate this claim[;] however, this act or any other act on the
> part of this company will not be construed as either a waiver of the
> policy provisions or its rights thereunder.*  Excelsior specifically
> reserves its right to rely upon each and every term and provision
> thereof and to disclaim liability and/or deny coverage for any
> reasons which may exist or which may hereafter appear and come
> to this company's attention.

(*Id.* (emphasis added)).  The third letter requested plaintiffs' EUOs and reiterated the reservation

of rights clause contained in the second letter.  (*Id.*).

Notwithstanding Peerless's consistent assertion of the reservation of rights clause,

plaintiffs maintain that Peerless's actions during the pre-suit period raise triable issues of fact as

to the applicability of the waiver and estoppel doctrines.  Those actions – which consist of

arranging inspections, requesting information and documentation about the claim, issuing small

reimbursement payments and conducting an examination of the property owner – were

undertaken as part of the defendant's contractual and legal right to conduct a pre-suit

investigation.  To infer from those acts alone that Peerless intended to forfeit its contractual

limitations defense or to lull plaintiffs into thinking so would contravene both common sense and

established law.  Certainly, insureds and insurers are both better served by promoting efforts to

resolve insurance claims short of litigation, which is often expensive and time-consuming.  In

order to do so, insurance carriers need to be able to investigate policy claims.  Were their actions

in doing so to be interpreted as an abandonment of their contractual limitations defenses, their

incentive to conduct such investigations and resolve claims without resort to litigation would likely diminish.  For this reason, to infer waiver or estoppel, courts require evidence of some representation or act by the carrier beyond investigation and negotiation of the claim.  *See Gilbert Frank Corp.*, 70 N.Y.2d at 968 ("[e]vidence of communications or settlement negotiations between an insured and its insurer either before or after expiration of a limitations period contained in a policy is not, *without more,* sufficient to prove waiver or estoppel") (emphasis added) (collecting cases).  I find that the record in this case is devoid of any such evidence.

In reaching this determination, I find that plaintiffs' reliance on *Greenpoint Bank v. Security Mut. Ins. Co.*, 668 N.Y.S.2d 501 (N.Y. App. Div. 1998), and *Ilic v. Peerless Ins. Co.*, 670 N.Y.S.2d 1006 (N.Y. Sup. Ct. 1998), is misplaced.  While the courts in both cases denied the insurance carrier's motion for summary judgment, finding that material questions of fact existed on the issues of waiver and estoppel, they did so on factual records materially different from the one before the Court in this case.  In *Greenpoint*, for example, the court determined that triable issues arose from the carrier's acceptance of a proof of loss filed after the limitations period. *Greenpoint Bank v. Security Mut. Ins. Co.*, 668 N.Y.S.2d at 502.  In *Ilic*, the court determined that triable issues arose from the carrier's issuance of two checks in partial payment of plaintiff's claim, one of which contained the explicit notation, "subject to final review and settlement."  *Ilic v. Peerless Ins. Co.*, 670 N.Y.S.2d at 1008.

In this case, however, plaintiffs timely filed their proof of loss, which prompted Peerless to investigate the claim by requesting documentation and information concerning the loss, arranging property inspections and scheduling the owner's deposition.  Although small payments were issued to plaintiffs, there were not accompanied by any verbal or written

statements promising future payment.  Quite to the contrary, written correspondence sent by

counsel for Peerless consistently asserted a reservation of rights clause.

I find the facts of this case rather more analogous to those that were before the

court in *Enterprise Engineering, Inc.*, a case in which summary judgment was awarded to the

carrier over plaintiff's objection that triable issues of fact existed on the issues of waiver and

estoppel.  In that case, the plaintiff sustained a loss to its business income and submitted a timely

claim to its carrier, which had insured plaintiff against business interruption and property income

loss.  *Enterprise Eng'g, Inc.*, 2004 WL 2997857 at *1.  After the claim was made, the carrier

issued two checks to the plaintiff in amounts aggregating less than the amount of the claim.  *Id.*

Plaintiff subsequently filed suit, but only after the policy's two-year limitations period had

expired.  *Id.*

The carrier moved for summary judgment, which the plaintiff opposed on the

grounds that the limitations period should not be enforced in view of the history of settlement

negotiations between the parties and the failure of the carrier to provide notice of any intention to

deny the remainder of the claim.  *Id.* at *4.  The court granted the defendant's motion, relying

upon the settled authority that waiver and estoppel may not be inferred from settlement

negotiations alone.  *Id.* at *3-4.  The court further distinguished the decision in *Ilic v. Peerless

Ins. Co.*, reasoning that the notations on the checks, rather than the payments themselves,

constituted a waiver of the limitations period.  *Id.* at *4.  Unlike the checks in *Ilic*, the checks

issued by the carrier in *Enterprise* (like the checks issued by Peerless in this case) contained no

notation or endorsement to indicate that future payments would be forthcoming.  *Id.  See also

Gilbert Frank Corp.*, 70 N.Y.2d at 968 (granting insurance carrier's motion for summary

judgment and finding no triable issues of fact as to waiver or estoppel where undisputed facts demonstrated that parties negotiated before and after limitations period expired and carrier made settlement offer after limitations period).

Accordingly, applying the settled authority discussed above to the undisputed factual record in this case, I conclude that no reasonable juror could find that Peerless has waived or is estopped from asserting that this action is untimely.

D. **Ambiguity of "Time For Suit" Clause:**  Plaintiffs also argue that the language of the "time for suit" provision in the insurance policy was ambiguous and thus unenforceable.  As previously noted, the challenged policy term provided:  "No action can be brought unless the policy provisions have been complied with and the action is started within two years of the date of loss."  (Docket # 15-1, Ex. B).  According to plaintiffs, the two clauses of that term imposed duties upon them that were incompatible and that could not both be discharged.  One of the duties imposed by the first clause was to submit to the carrier's demand for an EUO and for the production of requested documents.  The second clause imposed a duty to initiate any lawsuit within two years from the date of the loss.  Because Penna's EUO was not conducted until after the limitations period, plaintiffs argue, he could not have complied with all provisions of the insurance policy and have filed suit within two years.  (Docket # 22-7 at 9-10).

Plaintiffs' argument fails for two reasons – one factual and one legal.  As to the first, plaintiffs ignore the fact that it was they, not Peerless, who requested an adjournment of Penna's examination until a date after the limitations period had expired.  I can find no legal or equitable reason to infer that Peerless's acquiescence to plaintiffs' scheduling request should be construed as forfeiture of a contractual defense.  To do so would surely discourage parties and

14

counsel from extending to one another simple acts of courtesy, such as agreements to brief

scheduling extensions.  It might even encourage some to delay in hopes of gaining a tactical

advantage – an equally undesirable effect of the ruling plaintiffs urge.

Plaintiffs' challenge fails for the second reason that the New York Court of

Appeals has rejected a similar claim, and I find that its rationale applies equally to this case.  In

*Blitman Constr. Corp. v. Insurance Co. of N. Am.*, 66 N.Y.2d 820 (1985), the plaintiff submitted

an insurance claim under a policy containing a twelve-month limitations provision.  Shortly

before the period expired, the defendant carrier requested additional documentation from the

plaintiff.  Two days after the limitations period expired, the defendant requested that the plaintiff

sign a "non-waiver agreement" providing the defendant with an additional twelve months to

investigate the plaintiff's claim "without prejudice to any rights which may have heretofore

accrued to [the defendant]."  *Id.* at 821.  Shortly thereafter, the defendant conducted an

examination of the plaintiff's project manager.

At the end of the period agreed to in the "non-waiver" agreement, the plaintiff

filed suit; defendant moved for summary judgment on the grounds that the suit was untimely

because it had not been initiated within the original twelve-month period provided for in the

insurance policy.  *Id.* at 821, 823.  The court granted the defendant's motion and squarely

rejected the plaintiff's contention that the two clauses were inconsistent.[5]  *Id.* at 823.  According

to the plaintiff, the "time for suit" clause in the policy and the "non-waiver" agreement, read

together, "made it illogical and commercially unreasonable for [the plaintiff] to institute action

---

[5] The court also rejected the plaintiff's argument that the carrier's actions justified application of the doctrines of waiver and estoppel.  *Id.*

15

while the carrier was still investigating." *Id.* The court disagreed, noting that the plaintiff could have protected itself by "either beginning an action before expiration of the limitation period or obtaining from the carrier a waiver or extension of its provision." *Id.* Similarly, no reason has been tendered by plaintiffs why they could not have done likewise in this case.

In sum, plaintiffs were clearly obligated by the terms of their insurance agreement to commence suit within two years after the date of loss. This requirement was unambiguous, and plaintiffs failed to comply. Had they desired to postpone litigation and continue negotiations, they could have requested Peerless to agree to waive or extend the limitations period. They did not, and however harsh the result may be, their failure to timely file suit cannot be excused under either the doctrine of waiver or the doctrine of estoppel. Accordingly, I find that plaintiffs' suit is untimely and grant Peerless's motion for summary judgment.


## CONCLUSION

For the foregoing reasons, Peerless's motion for summary judgment (**Docket # 14**) is **GRANTED**.

**IT IS SO ORDERED.**


 *s/Marian W. Payson*
 MARIAN W. PAYSON
 United States Magistrate Judge

Dated: Rochester, New York
 September __24__, 2007